Stanley J. ZYDEL, Helmut Lehmann, Anthony Harasimonwicz, Patrick McDonough, Robert L. Pawelski, Allen Noble, Ronald Hoier, John A. Filipski, Patricia A. Skretny, Angelo V. Romano, Sophie Eaton, as Executrix of the Estate of Gerald D. Eaton, John Closs, Frank Maciejewski, Plaintiffs,

v.

DRESSER INDUSTRIES, INC., Ingersoll–Rand Company, Dresser–Rand Company, Defendants.

No. CIV–88–399C.

United States District Court,
W.D. New York.

Dec. 5, 1991.

Lippes, Kaminsky, Siverstein, Mathias & Wexler (Carol E. Heckman, of counsel), Buffalo, N.Y., for plaintiffs.

Maghran, McCarthy & Flynn (W. Donn. McCarthy, of counsel), Buffalo, N.Y., for defendants.

CURTIN, District Judge.

## BACKGROUND

Presently before the court are cross motions for reconsideration of the court's May 29, 1991, decision granting in part and denying in part defendants' motion for summary judgment. *Zydel v. Dresser Indus., Inc.*, 764 F.Supp. 277, 287 (W.D.N.Y.1991). Plaintiffs seek to reinstate plaintiff Stanley J. Zydel on the ground that the court overlooked Mr. Zydel's retained seniority under the United Steelworkers of America

("USWA") agreement when it dismissed him from the case. *See id.* at 286 n. 9. Plaintiffs also seek to revive their first and second claims which were dismissed by the court. *See id.* at 284–85. Defendants, on the other hand, ask the court to reverse its conclusion finding a genuine issue of fact precluding summary judgment on plaintiffs' third claim. Defendants offer additional affidavits to explain the pension plan provisions which the court found ambiguous. *See id.* at 282–83, 285–86. Defendants also seek to dismiss claims four and five, which the court did not reach in its earlier decision. Each of plaintiffs' five claims shall be reviewed.

## DISCUSSION

■ Plaintiffs seek to revive claims one and two of their second amended complaint which were dismissed in this court's prior order. *See id.* at 285. With respect to plaintiffs' second claim—promissory estoppel—plaintiffs have cited no new authority which might indicate that the court's prior reasoning was faulty. Indeed, on further review, the court has discovered several additional cases similar to the facts here which have held that state actions for promissory estoppel or false misrepresentation are preempted by ERISA where plaintiffs have sought thereby to recover benefits under an employee benefit plan. *Lee v. E.I. Dupont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990) (preempting claim of "plaintiffs [who] seek to recover benefits defined by their former employer's ERISA plan, benefits to which they would have become entitled but for a misrepresentation by their employer, during their employment, on which they relied to their detriment."); *Bellino v. Schlumberger Technologies, Inc.*, 753 F.Supp. 391, 392 (D.Me. 1990) (preempting collection under severance pay plan on basis of promissory estoppel); *Childers v. Northwest Airlines, Inc.*, 688 F.Supp. 1357, 1364 (D.Minn.1988) (preempting plaintiffs' claim that they were fraudulently induced to accept wage cuts on basis of promise to include them in employee stock ownership plans); *Pane v. RCA Corp.*, 667 F.Supp. 168, 172 (D.N.J.

1987), *aff'd*, 868 F.2d 631 (3d Cir.1989) (finding alleged breach of promise to include plaintiff in severance plan preempted by ERISA). Even courts that do not find preemption on the facts before them recognize this principle. *See, e.g., Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 162 (6th Cir.1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990) (distinguishing facts of case on basis that "[p]laintiffs ... do not seek plan benefits or an increase in plan benefits....").

■ In this case, there is no dispute that by bringing their second claim, plaintiffs are seeking to recover benefits under an employee benefit plan. Plaintiffs allege that they were promised an opportunity to return to their union positions without loss of union benefits if their management positions were ever abolished or if they retired. Item 37, ¶ 24. Plaintiffs also allege that when they were first advised of the Dresser plant closing, they were told that they could collect the more favorable of union or management pension benefits. *Id.*, ¶ 26. These alleged promises were not kept, and plaintiffs were therefore foreclosed from collecting 70–80 union pensions upon closure of the plant. As a remedy, plaintiffs seek to collect the same 70–80 pension benefits granted union members at the plant. *Id.*, ¶ 30. This claim clearly "relate[s] to" the union pension plans, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44–48, 107 S.Ct. 1549, 1551–53, 95 L.Ed.2d 39 (1987), and therefore, the court reaffirms its prior holding that this claim is preempted by ERISA.

Plaintiffs also seek reconsideration of the court's dismissal of their first claim—that "defendants' 'policy and practice' of guaranteeing to former union members who accepted promotion to management positions the greater of union or management pension benefits upon retirement was an 'employee benefit plan' under ERISA." *Zydel*, 764 F.Supp. at 284. In my prior opinion, I concluded that "policy and practice" could not *create* an employee pension plan because of ERISA's requirement that " '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.' " *Id.* (quoting 29 U.S.C. § 1102(a)(1)). Given the fact that union pension plans had existed, in writing, since before these plaintiffs joined the company, I further held that

> to the extent plaintiffs are unable to show, in writing, that they are entitled to benefits under these plans, their claim that the company's "policy and practice" established an entitlement to pension benefits is an assertion that these plans were modified *orally* to bring plaintiffs within the plans' ambit. Plaintiffs cannot maintain a cause of action for such an oral *modification*.

*Id.* at 285 (emphasis added and in original). Cases now cited by plaintiffs affirm these conclusions. *See Kane v. Aetna Life Ins. Co.*, 893 F.2d 1283, 1285 n. 3 (11th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) (noting the "rule that estoppel may not be invoked to enlarge or extend the coverage specified in a contract"); *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1420 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), *abrogated on other grounds, Mead Corp. v. Tilley*, 490 U.S. 714, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989) (distinguishing New York case that refused to create a contract by estoppel). Plaintiffs therefore no longer claim, per their complaint, Item 37, ¶¶ 7–22, that defendants' "policy and practice" *created* a plan. Nor do they contend that defendants' union pension plans were *modified* by the oral promises allegedly made to them. Rather, plaintiffs now argue that defendants' pension plans are ambiguous and must be *"interpreted"* by reference to defendants' alleged policy and practice of returning former management employees to the union. *See Kane*, 893 F.2d at 1286; *Amato*, 773 F.2d at 1420. Although oral modifications to pension plans are barred by ERISA, *see Zydel*, 764 F.Supp. at 284–85 (citing cases), oral promises which merely interpret ambiguous pension plan language are not, plaintiffs claim.

To recover under this theory, however, plaintiffs must show that the language in Dresser's union pension plans is ambiguous and, based on promises made by Dresser,

*was meant to apply to them.* To answer this question requires the court to revisit plaintiffs' third claim, under which the court found it ambiguous as to whether plaintiffs were entitled to 70–80 pension benefits under the terms of Dresser's pension plans. *Id.* at 286. The court held that there remained a genuine issue of fact with respect to this claim, and therefore denied defendants' motion for summary judgment. *Id.* Defendants have now filed additional affidavits explaining the pension plan provisions which the court found ambiguous, and on that basis move to dismiss claim three. Plaintiffs counter by arguing that defendants' declarations are self-serving, and that the pension plan language at issue cannot be read as restrictively as defendants suggest.

In evaluating claim three in my prior opinion, I looked to the language of the pension plans to determine whether plaintiffs could qualify thereunder for the 70–80 retirement benefits they sought. *Id.* Eligibility for 70–80 benefits is defined in § 4.04 of both the USWA and Office and Professional Employees International Union ("OPEIU") pension plans. Item 70, Exhs. 26, 27, § 4.04. To be eligible under § 4.04, a person must have (1) been a "Participant" in one of those plans, (2) had ten years of "Participation Service," and (3) met a combined age and years of participation service requirement totalling either 70 or 80. *See id.* In addition, the "Participant" must have been severed from service by reason of a permanent shutdown of the plant, department or subdivision thereof, or for another reason not applicable here. *Id.* As I noted in my prior order, these last three requirements would not appear to bar at least some plaintiffs from being eligible for 70–80 pensions. *Zydel,* 764 F.Supp. at 286. The real question was whether plaintiffs qualified as "Participant[s]" in these union plans.

To put this question in context, I quote extensively from the prior opinion:

> Both plans define a "Participant" as "any Employee participating in the Plan in accordance with provisions of Section 3.01." Item 70, Exh. 26, § 1.24; Item 70, Exh. 27, § 1.30. An "Employee" is de-

fined as a *person* who, on or after the Effective Date—February 16, 1985, the day Dresser Industries officially acquired the plant—has performed an hour of service for the company and is receiving remuneration for such service. *See* Item 70, Exh. 26, §§ 1.16, 1.18; Item 70, Exh. 27, §§ 1.22, 1.24. Section 3.01 provides:

> *Eligibility for Participation.* Any hourly-paid Employee who is a member of the bargaining unit represented by the Union and who is employed by the Employer's Worthington Compressor Division at Buffalo, New York, shall become a Participant immediately as of the Effective Date or, if later, as of his Employment Commencement Date.

> Further provided, the term Participant shall also include persons who, as of the Effective Date, were *participating* in the Predecessor Company Plan and whose seniority rights under the existing collective bargaining agreement have not terminated as of such date.

> Item 70, Exhs. 26, 27, § 3.01 (emphasis added). Plaintiffs do not contend they fit under the first category of participation. The question is whether plaintiffs fit under the second category.

*Zydel,* 764 F.Supp. at 282 (emphasis in original; footnote omitted).

The question is still whether plaintiffs fit under the second category of "Participant." My prior order concluded that this question could not be determined on the facts then before the court, and thus summary judgment was denied. The court found support for plaintiffs' inclusion as "Participants" pursuant to the following reasoning: (1) the first category of "Participant" is limited to "hourly-paid Employee[s]," whereas the second category uses the encompassing word "persons"; (2) the language in the second category including persons "whose seniority rights under the existing collective bargaining agreements have not terminated" would appear to include plaintiffs; and (3) "if the second category of "Participant" in § 3.01 did not include plaintiffs, it is not clear whom this

category *would* include." *Id.* at 283 (emphasis in original). Of these three reasons, the last was the most persuasive to the court in denying the motion for summary judgment.

In their motion for reconsideration, defendants have now stepped forward with the affidavit of Howard Janco, currently Senior Attorney for Dresser Industries, Inc., and formerly a party to the negotiation of the pension plans in question. Mr. Janco has provided the court with an answer to this third question. According to his understanding of the pension agreements:

> the term "Participant" included persons *NOT actively employed as of the Closing Date* but whose last employment position with the Worthington Compressor business preceding the Closing Date was a position covered by one of the aforementioned collective bargaining agreements *AND* such person as of the Closing Date was either:
>
> a.) on leave of absence, or
>
> b.) on layoff *and* has seniority rights such as recall *and* has not forfeited credited service under the pension plan.

Item 81, ¶ 7 (Janco affidavit) (emphasis in original). In support of this interpretation he cites § 10.7(h) of the Acquisition Agreement under which Dresser Industries agreed to assume pension obligations for certain participants in the hourly union plans of McGraw-Edison. *See* Item 81, Exh. A, § 10.7(h). Section 10.7(h) states in part:

> Each Dresser U.S. Hourly Plan shall provide benefits consistent with the corresponding M[cgraw]-E[dison] U.S. Hourly Plan. Dresser shall ... permit the transfer to and the assumption by Dresser effective as of the Closing Date under Dresser U.S. Hourly Plans, of the rights and obligations of M-E or its subsidiaries under the corresponding M-E U.S. Hourly Plans [A] as to the Hourly Union Employees who are employed by Dresser on and after the Closing Date and who were, immediately prior to to [sic] the Closing Date, participants in one of the M-E U.S. Hourly Plans, and [B] as to those Hourly Union Employees who were employees of M-E or Worthington-Masoneilan Operations prior to the Closing Date and who, as of the Closing Date were participants in one of the M-E U.S. Hourly Plans and either: (1) on leave of absence; or (2) on layoff and, whose seniority rights have not terminated under the terms of the applicable Collective Agreement and who have not forfeited credited service under the applicable M-E U.S. Hourly Plan.

The language of this agreement under part [A] corresponds closely to the first category of "Participant" in § 3.01 of Dresser's union pension plans. Mr. Janco contends that the obligation assumed by Dresser under part [B] of this agreement was translated into the language used to define the second category of "Participant" in § 3.01. Applying Mr. Janco's interpretation of § 3.01, none of the plaintiffs in this case would qualify as "Participants" in Dresser's union pension plans, and would therefore be ineligible for 70–80 pensions. Were this the only evidence supporting Mr. Janco's interpretation of "Participant," the court still might be inclined to find ambiguity in the pension plan.

In the court's view, however, there is additional, conclusive evidence supporting Mr. Janco's interpretation. As I noted in my prior opinion, although their eligibility for union pensions appeared to be ambiguous under *Dresser's* pension plans,

> plaintiffs, as management employees, were not eligible to receive benefits under the *McGraw-Edison* union pension plans. All pension benefits, including the 70–80 pension benefits at issue in this case, were restricted in those plans to "employees." *See* Item 69, Exhs. 24, 25, § II. "Employees" were defined as hourly paid persons covered by the collective bargaining agreement. *Id.*, § I(2).

*Zydel,* 764 F.Supp. at 283 (emphasis added). Although Dresser may have obligated itself to assume the pension liabilities of its predecessor, there is absolutely no evidence that defendants intended to *expand* the

pension eligibility of management employees when it assumed control of McGraw–Edison. Under McGraw–Edison's plan, plaintiffs were not eligible for the pension benefits for which they now seek recovery.

In response to the affidavit of Mr. Janco, plaintiffs have adduced no contrary evidence. Although plaintiffs' counsel informed the court during oral argument that Mr. Senturia, who negotiated the Dresser pension plans on behalf of the unions, has since passed away, this does not excuse plaintiffs from coming forward with someone who can dispute Mr. Janco's claims. Plaintiffs' sole argument in rebuttal to Mr. Janco is that the express language of § 3.01 does not support the restrictive reading given it by Mr. Janco and that, where there is ambiguity, a contract should be construed against its drafter. This is not sufficient to defeat summary judgment under Federal Rule of Civil Procedure 56(e), wherein plaintiffs "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Accordingly, defendants' motion for reconsideration on plaintiffs' third claim is granted, and that claim is hereby dismissed.

It is important to note in reaching this conclusion that the court need not consider plaintiffs' arguments under their first claim, whereby plaintiffs have sought to introduce extrinsic evidence that they were promised an opportunity to *return to the union* if their management positions were ever abolished. *See supra.* This argument has no bearing on the interpretation of § 3.01. Plaintiffs have never argued that, as management employees, they were "Participant[s]" under § 3.01 in the Dresser union pension plans. Thus, it is now clear to this court that plaintiffs are not entitled to recovery of 70–80 union pensions under the terms of the pension plans themselves.

That brings us back to plaintiffs' first claim, wherein plaintiffs contended that defendants' pension plans are ambiguous and must be "interpreted" by reference to defendants' alleged policy and practice of returning former management employees to the union. *See supra.* The problem with this claim is that plaintiffs have completely failed to show that defendants' pension plans are ambiguous with respect to them. In both *Kane*, 893 F.2d at 1285–86, and *Amato*, 773 F.2d at 1419–20, plaintiffs were able to point to specific contractual language which they were led to believe covered them under an employee benefit plan. Plaintiffs in this case have pointed to no ambiguous language in Dresser's union pension plans. Indeed, as the court noted in its prior order, Dresser's union pension plans state on the very first page that they are being published for the benefit of union employees of Dresser. *Zydel*, 764 F.Supp. at 286. Since there is no ambiguous contract language to "interpret," plaintiffs' first claim amounts to a cause of action for oral modification of Dresser's union pension plans, and this claim has already been rejected by the court. *Id.* at 285. Accordingly, the court expressly reaffirms its dismissal of plaintiffs' first claim.

In the court's prior opinion, because I found a genuine issue of fact with respect to plaintiffs' third claim, I chose not to address defendants' motion for summary judgment on plaintiffs' fourth and fifth claims. That motion has been reasserted, and I now take it up.

Plaintiffs' fourth claim alleges that defendants violated § 204(g) of ERISA, 29 U.S.C. § 1054(g), which prohibits an employer from reducing or eliminating an accrued benefit of a participant under an employee benefit plan. *See* Item 37. Given the court's holding above that plaintiffs were not entitled to union pension benefits under either McGraw–Edison's pension plans or Dresser's, this claim must be dismissed. No benefit was reduced or eliminated by defendants.

Plaintiffs' fifth claim is that defendants violated ERISA's notice requirement, 29 U.S.C. § 1054(h), when, in February, 1985, it attempted to amend McGraw–Edison's union pension plans to cease crediting

years of service under those plans to union employees transferred to management. *See* Item 37. Plaintiffs also claim defendants amended the plan by refusing to provide union retirement benefits to management employees in accordance with prior policy and practice. *Id.* The first allegation is deficient because it fails to prove, even if true, that plaintiffs were injured thereby. Even if plaintiffs were entitled to continue to accumulate service time under union pension plans while they worked in management, this does not establish that they were entitled to *collect* union pensions upon a shutdown of the plant. This latter claim must be proven to establish injury, but has been rejected by the court above. The second allegation is essentially a reformulation of plaintiffs' first, second, and third claims which have already been dismissed by the court. Accordingly, defendants' motion for summary judgment on this claim is granted.

■ Defendants' motion for summary judgment has now been granted on all of plaintiffs' claims.[1] Before closing this order, however, the court notes that it has not altered its prior conclusion that plaintiffs have standing to bring this case. *See Zydel,* 764 F.Supp. at 280–83. The court found that plaintiffs qualified as ERISA "participants" because they had a "reasonable expectation of returning to their union positions." *Id.* The court based this conclusion on four pieces of evidence: (1) collective bargaining agreements; (2) prior practice; (3) express promises; and (4) pension plan provisions. The fourth piece of evidence has now been found *not* to support plaintiffs' reasonable expectations of returning to the union. Despite knocking this leg out from the table, however, the court concludes that the other three pieces of evidence are sufficient to support standing. Unfortunately for plaintiffs, it is not sufficient to support recovery of union pension benefits.

1. For this reason, the court has not considered plaintiff Zydel's motion to be reinstated into the

Judgment shall enter in accordance with this opinion and order.

So ordered.