Gilbert **SNYDER,** Plaintiff,

v.

**ELLIOT W. DANN CO., INC.,** Pension Plan and Trust C/O Elliot W. Dann Co., Inc.; Elliot W. Dann Co., Inc., as Administrator and named fiduciary of Elliot W. Dann Co., Inc. Pension Plan and Trust; Martin Fawer, as Fiduciary of

the Elliot W. Dann Co., Inc. Pension Plan and Trust, and as Executor under the last Will and Testament of Elliot W. Dann, deceased; Steven Rudin, as Fiduciary of the Elliot W. Dann Co., Inc. Pension Plan and Trust and as Executor under the Last Will and Testament of Elliot W. Dann, Deceased; Ruth Dann, as Fiduciary of the Elliot W. Dann Co., Inc. Pension Plan and Trust, Defendants.

No. 93 Civ. 1994 (RWS).

United States District Court,
S.D. New York.

June 8, 1994.

Robinson Brog Leinwand Reich Genovese & Gluck, P.C. (Howard N. Beldock, of counsel), New York City, for plaintiff.

Krass & Lund, P.C. (Daniel P. Lund, of counsel), New York City, for defendants except Ruth Dann.

*OPINION*

SWEET, District Judge.

Defendants Elliot Dann Co., Inc. Pension Plan and Trust (the "Plan"), Elliot Dann Co., Inc. ("Dann Co."), Martin Fawer ("Fawer"), Steven Rudin ("Rudin") (collectively, the "Moving Defendants") have moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment against the Plaintiff Gilbert Snyder ("Snyder") in this ERISA action. Plaintiff Snyder has cross-moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment against the Defendants on his First and Fifth Counts of the Amended Complaint.

For the reasons set forth below, the Defendants' motion for an order of summary judgment is granted as to Counts One through Four, Six and Seven. Plaintiff's cross-motion for an order of summary judgment is granted as to his Fifth Count for "top-heavy minimum benefits."

**The Parties**

Plaintiff Snyder, an individual residing in New York City, is a vested participant in the Plan, an ERISA employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A).

The Defendant Plan is administered within the Southern District of New York through the accounting offices of Defendant Fawer, a licensed CPA. The Plan was established on June 30, 1980 and maintained continuously thereafter by Dann Co.

Defendant Dann Co., a New York Corporation, is a real estate brokerage and management company. Elliot Dann owned 100% of the issued and outstanding sock and was the sole officer of Dann Co. from its formation in 1969 until his death on July 20, 1989. Dann Co., the Administrator of the Plan as defined by 29 U.S.C. § 1002(16)(A), maintains its offices and records at the Fawer offices. Dann Co. is also a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

Defendant Fawer, pursuant to delegation from Dann Co., maintains the records of the Plan, performs all the functions as Administrator of the Plan, within the meaning of Administrator in 29 U.S.C. § 1002(16)(A), and is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

Defendant Rudin, an executor under the Last Will and Testament of Elliot W. Dann, is a Fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

Non–Moving Defendant Ruth Dann was a Trustee of the Plan and is a Fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

**Prior Proceedings**

Snyder filed his initial Complaint in this ERISA action on March 29, 1993. Snyder served on opposing counsel an amended complaint at a later date, but neglected to file a copy with the Court. Defendants served an

answer to the Amended Complaint on September 21, 1993.

On November 26, 1993, the Defendants filed this motion for summary judgment on all counts. Plaintiff cross-moved for an order of summary judgment as to Counts One (claim for benefits under the Plan) and Five (claim for top-heavy minimum benefits) of the Amended Complaint. Oral argument was heard on this motion on April 6, 1994 and the motion was considered fully submitted at that time.

On May 19, 1994, at the request of Chambers, the Plaintiffs provided this Court with a courtesy copy of their Amended Complaint, which they neglected to file. In the interest of equity and judicial economy, and since both parties have incorporated the Amended Complaint in their briefs to this Court, the Amended complaint has been duly considered by the Court as if it had been properly filed.

### Facts

Plaintiff Snyder was employed as a licensed real estate broker at Dann Co. from May 1, 1969 through September 16, 1986.[1] During his tenure at Dann Co. Snyder was compensated on a 50% commission basis. Snyder worked closely with the founder and owner, Elliot Dann, also a licensed real estate broker who initiated and closed his own transactions.

On August 7, 1980, the Plan was adopted by Dann Co.[2] The Plan was submitted to the Internal Revenue Service (the "IRS") in September 1980 for a ruling on its tax-qualified status and received a favorable Determination Letter dated January 12, 1981.

Snyder contends that in 1980 he had several discussions with Elliot Dann regarding the formation of a pension plan in which he was told that his benefits under such a plan would be proportionately tied to increases in his commission income. Snyder contends that he never received an announcement, summary plan description (known as "SPDs") or any other documents describing the Plan. Plaintiff contends that he was never informed that his benefits under the Plan would not be based upon total compensation, contrary to his alleged conversations with Elliot Dann otherwise.

A disputed question of fact concerns whether the Plan states that employees compensated on a commission basis, in whole or in part, is subject to a $2,167 Limitation per month. In August 1980 the Plan's attorneys prepared an announcement for delivery to all Plan participants describing the Plan and stating the "correct" $2,167 Limitation. (See Defs.' Ex. F.) In 1981, a SPD was prepared which, according to the Defendants, contained a typographical error stating that the compensation Limitation of commission employees for Plan purposes was $3,167 instead of $2,167. (See Defs.' Ex. G.)

Several years later, in June of 1985, the Plan's attorneys amended the Plan. In the updated SPD, which Dann Co. delivered to its employees in July 1986, the correct $2,167 Limitation was published. (See Defs.' Ex. H at 2, Ex. I at 3.) According to the Defendants, then, the original Plan, all Amendments thereto, both announcements and two of the three SPDs provided to their employees stated the "correct" $2,167 Limitation; the 1981 SPD with the one digit "typographical error" stating the Limitation was $3,167 as opposed to $2,167 was an unfortunate mistake which remained unrectified until the release of the 1985 SPD.[3]

1. Snyder's exact termination date is a disputed issue of fact which is discussed at length in the Court's treatment of Plaintiff's claim for top-heavy minimum benefits. Plaintiff contends he was employed until alternately, September 16, 1986, (see Am.Compl. ¶ 14), or December 15, 1986 (see Pl.'s Mem. of Law at 3).

2. Again, there is a conflict of dates between the Amended Complaint, in which Snyder claims that he became a participant in the Plan on July 1, 1979 and his Memorandum of Law in which he asserts the Plan was only adopted on August 7, 1980. (Compare Am.Compl. ¶ 15 with Pl.'s Mem. of Law at 4.) Further, the Defendants contend that Snyder became a participant in the Plan upon its formation date, June 30, 1980. (See Fawer Aff. ¶ 11.)

3. The Plan was properly restated for the Tax Equity and Fiscal Responsibility Act ("TEFRA"), the Tax Reform Act of 1984 ("DEFRA") and the Retirement Equity Act of 1984 ("REA"). The IRS issued a favorable Determination Letter dated November 12, 1985 with respect to the Plan, as amended, effective July 1, 1984. In the IRS

Plaintiff contends that he only received the 1981 SPD which stated that the compensation of commission employees was limited to $3,167 per month, or $38,004 per annum. (*See* Pl.'s Mem. of Law at 5.)

The Plaintiff states that the Plan's actuary calculated Plaintiff's compensation for benefit calculation and funding purposes to be: $80,664 for the year ending June 30, 1984; $133,092 for the Plan year ending June 30, 1985; $133,092 for the Plan year ending June 30, 1986; and $200,000 for the Plan year ending June 30, 1988. (Pl.'s Mem. of Law at 6.) The Plaintiff asserts that the Defendants were using these figures to create a large tax-deductible contributions to the Plan and have only recently "resurrected" the $2,167 Limitation to "deprive the Plaintiff of the benefits to which he is entitled." *Id.*

On October 31, 1990, the Plan was terminated. On October 25, 1991, the IRS issued a favorable Determination Letter concerning the Plan's termination. The Pension Benefit Guaranty Corporation has not issued a notice of noncompliance regarding the Plan's termination and, as a result, the termination is considered standard. Upon termination the Plan had assets of $1,912,166, benefits payable of $734,763 (including the $61,205 purportedly owed to Snyder) and excess assets equal to $1,177,403 which would revert to the Company upon payment of the Plan benefits.

In August of 1992 Snyder received forms from the Plan's outside administrator informing him that the Plan had been terminated and describing his benefits. Plaintiff alleges that he attempted to contact the outside administrator and the Plan's attorneys to discuss whether his benefits were improperly calculated. In correspondence the Plan's attorneys urged Snyder to sign the distribution forms on the basis that his compensation was subject to the $2,167 Limitation. The Plan's attorneys accordingly calculated that Snyder was entitled to a monthly benefit of $403.29 which equaled the $68,885 lump sum payment as of November 30, 1992.

Snyder subsequently retained counsel, who sought additional information from the Plan's attorneys. In a letter of January 15, 1993,

the Plan's attorneys upwardly revised their calculations of Snyder's benefits to $553.61 per month, which equaled a lump sum payment of $94,560 as of November 30, 1992.

In a letter dated February 23, 1993, Snyder's attorneys again requested documents from the Plan's attorneys and stated that that letter was a claim for his benefits. On March 24, 1993, in a written response the Plan's attorneys provided some, but not all, of the requested documents and told the Plaintiff's attorneys to "please set forth [Snyder's] claim in detail including citations of the Plan and citations of law, where applicable." (Pl.'s Ex. 17 at 2.)

On April 23, 1993, the Plan's attorneys wrote to Snyder's attorneys:

> Since you did not respond to the request in my March 24, 1993 letter that you set forth Mr. Snyder's claim in detail, the fiduciaries of the Plan were not given an opportunity to review adequately Mr. Snyder's claim, and thereafter, make a determination as to whether such claim should be accepted or rejected.

> Since you have not, to date, responded to our request, the fiduciaries have determined that the claim you have asserted on Mr. Snyder's behalf must be rejected. If you disagree with this rejection, you are welcome, on behalf of Mr. Snyder, to be afforded an opportunity for a full and fair review by the Board of decision set forth herein denying Mr. Snyder's claim, pursuant to Section 15.2 of the Plan ...

(Pl.'s Ex. 18.)

Plaintiff did not pursue the remedy provided under Section 15.2 Plan and instead filed this action which asserts the following Counts: (1) claim for Snyder's benefits under the Plan, in accordance with the Plan's modification of the $2,167 Limitation used to calculate Elliot Dann's benefits; (2) breach of fiduciary duty by paying benefits to Elliot Dann which were not due to him under the terms of the Plan; (3) estoppel, based on the $3,167 Limitation set forth in the 1981 SPD; (4) breach of contract, the payment of Elliot

submission, the Plan fiduciaries calculated Plaintiff's compensation, for the purposes of calculating the benefits under the Plan, to be $12,500 per month or $150,000 per annum for 1985.

Dann's benefits established a "custom and practice" without reference to the Plan's definition of considered compensation; (5) claim for top-heavy minimum benefits, pursuant to Section 416(c) of the Internal Revenue code of 1986; (6) liability of the Corporation, pursuant to 29 U.S.C. § 1104; (7) removal of the administrators, pursuant to 29 U.S.C. § 1109(a); and (8) attorney's fees, pursuant to 29 U.S.C. § 1132(g).

The Defendants have moved for an order of summary judgment in their favor as to Counts One through Four, as well as Counts Six through Eight to the extent the Court's disposition of the earlier claims apply to later. Snyder has cross-moved for an order of summary judgment in his favor as to Counts One and Five.

## Discussion

### I. *The Standard For Summary Judgment*

The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has unambiguously defined the role of the district court in deciding Rule 56 motions:

> The district court's role ... requires the court not to resolve disputed issues of fact itself, but rather to see if there are issues of fact to be resolved by the factfinder at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). That is to say, when examining the record before it to see if there are any genuine issues of material fact, the court's focus is on issue-finding, not on issue-resolution. In making its assessment, the trial court must

view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See United States v. Diebold*, 369 U.S. 654, 655 [82 S.Ct. 993, 8 L.Ed.2d 176] (1962) (per curiam).

*Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

When a motion for summary judgment is made and the nonmoving party will bear the burden of proof at trial, "Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991). However, if the moving party is still entitled to judgment as a matter of law after all the facts alleged by the nonmoving party are resolved in his favor as true, then any remaining factual disputes are neither "genuine" nor "material" and will not prevent the court from granting the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[A] material fact is 'genuine' ... if the evidence is such that a rea-

sonably jury could return a verdict for the nonmoving party."). Thus, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Finally, the court must look to the substantive law to determine which facts are "material," to wit, disputed facts that might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. It follows, then, that "[e]ntry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

## II. *ERISA Plans May Not Be Modified Except in Writing*

Count One of the Amended Complaint alleges that the calculation of Elliot Dann's compensation constitutes a modification and amendment of the Plan which must be applied to the calculation of Snyder's benefits under the Plan.

■ Under ERISA, as set forth in 29 U.S.C. § 1102(a)(1), "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." The courts have construed this provision to determine that "oral representations or other informal statements cannot be used to contradict or supersede the terms of an ERISA plan." *Schoonmaker v. Employee Sav. Plan of Amoco Corp.*, 987 F.2d 410, 412 (7th Cir. 1993); *see also Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1296 (5th Cir.1989) (holding "oral agreements or modifications to a pension plan are contrary to the express provisions of ERISA."). The rationale behind this "writing requirement [is to] protect[ ] employees from having their benefits eroded by oral modifications to the plan." *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992).

"ERISA's framework ... ensures that plans be governed by written documents filed under ERISA's reporting requirements and that SPDs, drafted in understandable language, be the primary means of informing participants and beneficiaries." *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988) (citing 29 U.S.C. §§ 1022(a)(1), 1022(a)(2), 1102(a)(1), 1102(b)(3)). The Second Circuit has determined that formal documents, such as the Plan documents themselves and their SPDs, "govern an employer's obligations under ERISA plans." *Id.* In *Moore*, the participants in a medical benefit plan argued that the employer's communications to them through filmstrips and other presentations were misleading in such a way as to constitute a modification of their Plan. *Id.* at 493. The Second Circuit, in rejecting this claim, found that informal communications were not binding in light of ERISA's "framework" which provides that Plans are to be governed by the written documents. Accordingly, "[a]bsent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries." *Id.* at 492.

Numerous Circuits have held that ERISA's statutory framework preempts actions which are based upon allegations of informal modifications to plans governed under ERISA. *See, e.g., Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989) ("ERISA does not recognize the validity of an oral modification of a pension plan[.]"), *cert. denied*, 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989) ("ERISA precludes oral modifications to benefit plans and [ ] claims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension benefits."); *Musto v. American Gen. Corp.*, 861 F.2d 897, 910 (6th Cir.1988) (clear terms in written benefit plan may not be modified or superseded by oral representations of employer), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262, 1264 (10th Cir.1988) (no liability under ERISA for purported oral modifications of terms of employee benefit plan); *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir.1986) (ERISA's requirement that plans be established and maintained in writing precludes oral or informal written modifications of plans). As such, claims of promissory

estoppel are not cognizable in suits seeking to enforce alleged rights to pension benefits.

Under ERISA, benefit plans are required to "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan[.]" 29 U.S.C. § 1102(b)(3). The Plan adopted by Dann Co. complies with this ERISA requirement in Section 12.6 and specifically provides for that all such amendments are to be in writing:

*Right to Amend*

(a) Except as hereinafter provided, the Company shall have the right to amend or modify the Plan and Trust at any time and from time to time to any extent that it may deem advisable. Such amendment or modification shall be in writing ...

(Am. Plan at 12C).[4]

■ In Count One, Snyder claims the Plan was informally modified or amended when Elliot Dann's benefits were calculated in a way that allegedly deviated from the terms of the $2,167 Limitation. However, this apparent claim of informal modification, cannot, as a matter of law, prevail given that both under ERISA as well as the plain language of the Plan, amendments to the Plan must be made in writing. Oral modifications and the conduct alleged here are not actionable under ERISA. *Cf. Zydel v. Dresser Indus., Inc.*, 764 F.Supp. 277, 285 (W.D.N.Y.) ("to the extent plaintiffs are unable to show, in writing, that they are entitled to benefits under these [pension] plans, their claim that the company's 'policy and practice' established an entitlement to pension benefits is an assertion that these plans were modified orally to bring plaintiffs within the plans' ambit. Plaintiffs cannot maintain a cause of action for such an oral modification...."), *modified*, 798 F.Supp. 975 (W.D.N.Y.1991); *see also Smith v. Dunham–Bush Inc.*, 959 F.2d 6, 10 (2d Cir.1992) ("all agreements relating to pension plan must be in writing.")

■ Even assuming that conduct *per se* could constitute a binding amendment or modification of the Plan, Elliot Dann's compensation complies with the express provisions of the Plan and therefore may not be considered an amendment. Elliot Dann's compensation had no proportionate relationship to his real estate brokerage commissions that he generated. The evidence put forward in these motions indicate that Elliot Dann, as the Chief Executive Officer and sole shareholder of Dann Co., was compensated based upon the corporation's annual profitability and accordingly did not have a uniform relationship from year to year to Dann Co.'s gross commission income, net commission income, gross income or net income. (*See* Defs.' Mem. of Law at 15, Table Analyzing Corporate Income and Expenditures.) In contrast, Snyder's compensation was 50% of his real estate commission income and thus fell within the scope of the Plan.

■ Snyder has failed to state how Elliot Dann's compensation under the Plan rises to a level "tantamount to proof of fraud" required by the Second Circuit under the holding of *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988). Snyder's additional allegations concerning Dann Co.'s misrepresentation of Snyder's compensation to the IRS are neither pleaded in the Amended Complaint nor are they supported by the evidence presented in the record before this Court.[5]

---

4. Section 12.5 of the original plan similarly provided for amendments to be in writing:

12.5 Except as hereinafter provided, the Company shall have the right to amend or modify the Plan and Trust at any time and from time to time to any extent that it may deem advisable. Such amendment or modification shall be in writing....

(Plan § 12.5 at 12 B).

5. The compensation records appear to have been properly provided to the IRS, (*see* Fawer Aff. Ex. 5), and it appears that the Plan would have qualified for favorable tax treatment under the law regardless of the benefit calculations. Additionally, the Plaintiff has not indicated that the 1985 submission of the Plan to the IRS was calculated by the Defendants and not the Plan's actuaries, The Pension Stores. Even if the Defendants somehow misrepresented the Plaintiff's pension calculations on Dann's tax statement, it remains unclear how such an act harms the Plaintiff or that he was ever aware of, or relied upon, the alleged misrepresentations to the IRS. Thus, fraud could not have been perpetrated upon the Plaintiff by the Defendants' representations to the IRS.

Accordingly, summary judgment is granted with respect to Snyder's first claim for benefits under the Plan.

### III. *Estoppel*

Snyder claims that the Defendants are estopped from applying the $2,167 Limitation to Snyder because: (a) the Defendants disregarded the $2,167 Limitation for the purposes of obtaining IRS approval for the Plan; (b) the Defendants disregarded the $2,167 Limitation when calculating Dann's benefits; (c) the Plaintiff relied on Dann's oral representations that the increase in his benefits would be tied to his commission increases; (d) that the $3,167 Limitation set forth in the 1981 Summary Plan Description binds Dann Co. Although only the fourth of these Claims is actually alleged in the Plaintiff's Amended Complaint, in the interest of judicial economy all four claims will be addressed here.

■■■ As a matter of law all state common law claims of promissory estoppel, breach of contract, or fraud are preempted by ERISA. *See* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *see also Sandler v. Marconi Circuit Technology Corp.*, 814 F.Supp. 263, 265 (E.D.N.Y.1993) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) (ERISA preempts state law claims)). Only in "extraordinary circumstances" can principles of estoppel apply to ERISA cases. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1041 (2d Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986)); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1318–19 (3d Cir.), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); *see also Donnelly v. Bank of New York Co.*, 801 F.Supp. 1247, 1253 (S.D.N.Y. 1992) ("courts are 'reluctant to apply the estoppel doctrine to require the payment of pension funds' because '[t]he actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the plan.") (citations omitted). As no "extraordinary circumstances" are presented here, Snyder's estoppel claims must fail.

■■■ Even if Snyder's estoppel claims were not preempted by ERISA, there is no merit to his assertions. There are three elements necessary to sustain a an estoppel claim: (1) material misrepresentation, (2) reliance and (3) damage. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993). Snyder's first two contentions, that the Defendants disregarded the $2,167 Limitation first, in obtaining IRS approval, and second, in calculating Dann's benefits do not satisfy these elements. Plaintiff has not alleged, nor can he show, that he had knowledge regarding either the alleged misrepresentations to the IRS or Elliot Dann's compensation calculations. As a result, Snyder has not established that he relied on any representation made by the Defendants regarding these two claims, much less whether these claims are indeed material misrepresentations.

■■■ Snyder's third contention is that he relied on Elliot Dann's alleged representation that his benefits would be tied to increases in his commission. Parenthetically, this contention, if true, is in contradiction with his fourth contention, which is that he relied upon the 1981 SPD which stated that there was a $3,167 Limitation. Snyder has admitted that he received the 1981 SPD which expressly stated that there was a Limitation, albeit the wrong amount. As discussed above, pursuant to ERISA regulations the written SPD and Plan control alleged oral modifications of pension plans. Snyder's argument is also undermined by the fact that he stayed on at the firm five more years after he admittedly received the 1981 SPD. Therefore, this claim may not prevail given the absence of any factual basis for his assertion that he justifiably relied upon Elliot Dann's alleged oral misrepresentation that his pension was tied to his commission.

■■■ Snyder's last contention—the only one pleaded in his Amended Complaint—is that he detrimentally relied on the 1981 SPD which stated that there was a $3,167 Limita-

tion to Plan. The Defendants have claimed that the $3,167 Limitation mentioned in the 1981 SPD was a typographical error which inserted a "3" instead of a "2" in the $2,167 Limitation. To bolster this contention, the Defendants have proffered copies of the original Plan, the 1986 Amended Plan, and the 1980 and 1985 SPDs, distributed to their employees, all of which contain the correct $2,167 Limitation. The necessity of reaching the question of whether Snyder reasonably relied upon the representation of the 1981 SPD over the remaining Plans and SPDs is obviated by the 1981 SPD's disclaimer.

The 1981 SPD contained a disclaimer stating that the content of the Plan, and not the SPD, would control if there were conflicting provisions:

> This Summary Plan Description is designed to familiarize you with the provisions of our Plan. In the case of any conflict between the content of this summary and the content of the Plan, the terms of the Plan shall govern.

In a similar context, the Second Circuit[6] found such provisions to be valid and ruled that terms of the Plan should govern in such circumstances. *See Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1418 (2d Cir. 1985) ("However, the [SPD] also reserves to [Defendants] the right to amend the Plan and states that the terms of the Plan and related trust agreement 'will govern in all cases.' These unambiguous provisions preclude any separate contract claim based solely on the language of the summary plan description."), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *see also Osborne v. New York State Teamsters Conference Pension & Retirement Fund*, 783 F.Supp. 739, 743–44 (N.D.N.Y.1992), *vacated on other grounds*, 792 F.Supp. 177 (N.D.N.Y. 1992); *but see Heidgerd v. Olin Corp.*, 906

F.2d 903, 906–07 (2d Cir.1990) (holding plaintiffs may rely on SPD when it purports to summarize the plan in an action in which the SPD, but not the Plan itself, was distributed with employees and filed with Secretary of Labor contract).[7]

Accordingly, as a matter of law, the 1981 SPD's disclaimer which favored the language and content of the Plan bars Snyder from asserting his collateral estoppel claim against the Defendants.

## IV. *Breach of Fiduciary Duty*

 Snyder has failed to raise material facts supporting his claims against the Plan fiduciaries Elliot Dann, Fawer and Rudin under § 404 of ERISA, 29 U.S.C. § 1104, for breach of fiduciary duties. (*See* Am.Compl. ¶ 36.) Snyder may not sue for breach of fiduciary duties under ERISA in his individual capacity. Section 409 of ERISA, the statute which authorizes a suit for breach of fiduciary duties as set forth in § 404, provides that "[a]ny person who is a fiduciary [under this subchapter] ... shall be personally liable to make good to such plan any losses to the plan resulting from each such breach...." 29 U.S.C. § 1109(a). Accordingly, such suits can only be maintained on behalf of the plan itself and not by an individual beneficiary in his or her own behalf. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–43, 105 S.Ct. 3085, 3089–91, 87 L.Ed.2d 96 (1985) (recovery for violation of § 409 inures to benefit of plan as a whole); *Donnelly v. Bank of New York Co.*, 801 F.Supp. 1247, 1253–54 (S.D.N.Y.1992); *O'Neil v. Gencorp, Inc.*, 764 F.Supp. 833, 833–34 (S.D.N.Y.1991).

## V. *Breach of Contract*

Plaintiff's breach of contract claim, the Fourth Count in his Amended Complaint,

---

**6.** Other Circuits have also determined that a provision in a Plan will control claims brought pursuant to representations made in the SPDs. *See, e.g., Gillis v. Hoechst Celanese Corporation*, 4 F.3d 1137, 1142 (3rd Cir.1993) (plan controls summary document); *Kolentus v. Avco Corporation*, 798 F.2d 949, 958 (7th Cir.1986), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987) (where summary booklet states that the text of the plan governs over the summary booklet, the plan controls); *McGee v. Equicor–*

*Equitable HCA Corp.*, 953 F.2d 1192, 1200 (10th Cir.1992) (where conflict between original agreement and summary of benefits which has a disclaimer, the original agreement controls).

**7.** It must also be noted that the Secretary of Labor has declined to promulgate regulations prohibiting SPD descriptions from containing such disclaimers. *See Trombly v. Marshall*, 502 F.Supp. 29, 31 (D.D.C.1980).

must be dismissed as a matter of law. ERISA preempts breach of contract claims. *See* 29 U.S.C. §§ 1144(a), 1144(b)(2)(A). The Supreme Court has stated that breach of contract claims are specifically preempted by the civil enforcement provisions set forth in ERISA § 502(a), 29 U.S.C. § 1132(a). *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52–56, 107 S.Ct. 1549, 1555–58, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 8–10 (2d Cir.1992).

Accordingly, Snyder's breach of contract claim, as a matter of law, cannot lie.

## VI. *Top–Heavy Minimum Benefits*

Snyder has cross-moved for an order of summary judgment on his claim for top-heavy minimum benefits under the Plan for the years 1984, 1985, and 1986. Defendants, in their Reply Memorandum of Law, have conceded that Snyder is entitled to top-heavy minimum benefits under the Plan for the years 1985 and 1986, but contest his 1987 claim on the basis that Snyder did not complete a "year of service."

Section 416(c) of the Internal Revenue code of 1986 (the "Code") and Section 7.3 of the Plan provide that a member of the Plan who is not a "key employee" is entitled to a minimum annual pension ("top-heavy minimum benefit") equal to the product of two percent of compensation multiplied by his or her "years of service". *See* 26 U.S.C. § 416(c)(1)(A)–(B). The Plan was a "top-heavy plan" as defined by 26 U.S.C. § 416(g)(1)(A):

the term "top-heavy plan" means, with respect to any plan year—

(i) any defined benefit plan if, as of the determination date, the present value of the cumulative accrued benefits under the plan for key employees exceeds 60 percent of the present value of the cumulative accrued benefits under the plan for all employees, and

(ii) any defined contribution plan if, as of the determination date, the aggregate of the accounts of key employees under the plan exceeds 60 percent of the aggregate of the accounts of all employees under such plan.

In accordance with this definition, the Plan was a top-heavy plan in 1984, 1985 and 1986.

Snyder was not a "key employee" as defined by 26 U.S.C. § 416(i)(1) and Section 2.18 of the Plan and he has indisputably completed a "year of service" as defined by Sections 2.17 and 2.40 of the Plan for the years 1984 and 1985.

 The only remaining issue is whether Snyder is entitled to top-heavy minimum benefits for the 1986 Plan year. Both parties concur that Section 2.17(a) of the Plan requires that in order to receive top-heavy minimum benefits, an employee must have rendered 1,000 hours of service. However, a dispute remains as to whether Snyder's post termination services, conducted on behalf of Dann Co., may be counted towards his 1986 "year of service."

Snyder resigned from Dann Co. on September 15, 1986 but continued to render service to the Company on a regular basis through December 15, 1986. The affidavits submitted by Plaintiff indicate that Snyder conducted an extensive series of telephone conferences, correspondence and meetings on behalf of Dann Co. which culminated in the closing of the sale of property known as "36 West 62nd Street" on December 10, 1986. (*See* Kalikow Aff.; Snyder Aff. of March 15, 1994; Shapiro Aff.) This sale generated in a fee of $475,000 to Dann. Co., one half of which was paid to Snyder on December 15, 1986. Given that the Plaintiff was compensated on a commission basis, it appears that he may be considered employed for Plan purposes through the final date of his remuneration.[8]

The Defendants have not, or cannot, produce any documentation supporting their

---

**8.** *Darden v. Nationwide Mut. Insurance Co.*, 969 F.2d 76, 77 (4th Cir.1992), a case concerning independent contractors and the definition of employee under ERISA is inapplicable here as Snyder's commissions were characterized by the

Defendants themselves as wages in when they duly withheld income tax and filed a Form W–2, used for employees, and not a Form 1099 used for independent contractors. (Snyder Aff. Ex. 1–3.)

contention that Snyder did not put in extensive hours in finalizing the Sale on December 10, 1986. Snyder has put forward sufficient evidence to establish his claim that he worked 11 semi-months (July 1 through December 15, 1986). Pursuant to Section 2.17(f)(iii) of the Plan, 11 semi-months multiplied by 95 equals a total of 1,045 hours of service. Accordingly, Snyder shall be granted top-heavy minimum benefits for all three years (1984, 1985 and 1986) and an order of summary judgment is granted in his favor on Count 5 of the Amended Complaint.

## VII. Attorneys' Fees

 Attorney's fees in ERISA matters are governed by 29 U.S.C. § 1132(g)(1) which provides: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and cost of action to either party. The decision of whether to award attorneys' fees, then, lies within the discretion of the district court.[9] See Fase v. Seafarers Welfare & Pension Plan, 589 F.2d 112, 116 (2d Cir.1978). In making such a determination, the Court must keep in mind the Second Circuit's admonishment that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 872 (2d Cir.1987).

In this case, both parties have been awarded summary judgment as to certain counts of the Amended Complaint. Viewing the difficulty Snyder had in acquiring information regarding the Plan and his benefits from the Defendants in light of ERISA's mandate to protect workers' rights to information about their pension benefits, it is tempting to award the Plaintiff all reasonable attorney's fees in this matter. However, Snyder only prevailed on his top-heavy minimum benefits

claims, pursuant to 26 U.S.C. § 416 of the Internal Revenue Code, and not on his ERISA claims. Given the language of ERISA's fee-shifting statute—"[i]n any action under this subchapter"—it appears the Court is prohibited from making a fee award in his favor as he has not prevailed on any of his ERISA claims. See 29 U.S.C. § 1132(g)(1).

Accordingly, both parties are responsible for their respective fees in this action.

## Conclusion

For the reasons set forth above, an order of summary judgment is granted to the Defendants concerning Counts One, Two, Three, Four, Six and Seven of the Complaint and to the Plaintiff concerning Count Five.

It is so ordered.

---

9. Five factors are usually considered by the courts: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir.1987) (citing Ford v. New York Central Teamster Pension Fund, 506 F.Supp. 180, 183 (W.D.N.Y.1980), aff'd, 642 F.2d 664 (2d Cir. 1981) (per curiam)).