Richard **KIETLINSKI,** on behalf of himself and all other Retired Employees of General Electric Company, Similarly Situated, Plaintiff,

v.

**GENERAL ELECTRIC COMPANY,** Defendant.

**Civ. No. 91–CV–171 RWS.**

United States District Court, N.D. New York.

May 25, 1995.

DeLorenzo, Gordon Law Firm, Schenectady, NY (Thomas E. DeLorenzo, of counsel), for plaintiff.

Bond, Schoeneck & King, L.L.P., Albany, NY (Richard C. Heffern, of counsel), for defendant.

### MEMORANDUM–DECISION AND ORDER

RALPH W. SMITH, Jr., United States Magistrate Judge.

This matter was referred to the undersigned by the Honorable Con. G. Cholakis by Order dated August 9, 1994 for all further proceedings and the entry of final judgment upon the consent of the parties and in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

Plaintiff, a former General Electric Company ("GE") employee, brought this action on behalf of himself and all other similarly situated former GE employees (the "class" or the "plaintiff class"),[1] seeking (1) entitlement to a "special supplement" under the GE pension plan, (2) continuation of health insurance benefits until age 65 at no cost, and (3)

---

1. Judge Cholakis certified this action as a class    action in an Order dated June 19, 1992.

"broader benefits" than those provided to other GE retirees. Although originally brought in New York State court and alleging only state law claims, this action was timely removed by defendant to this court on the ground that plaintiff's claims are preempted and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

A bench trial was held in this matter between March 14 and March 16, 1995. Immediately following the parties' opening statements, the plaintiff class withdrew its claim for continuation of health insurance benefits until age 65 at no cost in light of the Supreme Court's recent decision in *Curtiss-Wright Corp. v. Schoonejongen,* —— U.S. ——, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). In addition, the plaintiff class has abandoned its claim for "broader benefits" than those provided to other GE retirees. Thus, the only issue remaining to be decided is whether the members of the plaintiff class are entitled to a "special supplement" under the GE pension plan. This Memorandum–Decision and Order constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

*Findings of Fact*

In November of 1986, GE announced the closing of a plant in Schenectady, New York. In connection with said plant closing, affected employees were offered certain options regarding layoff or termination pay.

Members of the plaintiff class who were "hourly" employees of GE had three options from which to choose. The first, called Special Continued Termination Pay ("SCTP"), was available to employees who, in May of 1987, were between 55 and 60 years of age and had at least 25 years of continuous service with GE. Eligible employees who chose to accept SCTP agreed to terminate their employment with GE. In return, they would receive, *inter alia,* 50% of their straight-time earnings until age 60, with some restrictions. At age 60, they would officially "retire" and begin receiving pension benefits from the GE pension plan.[2]

As an alternative to SCTP, hourly class members could have chosen to receive benefits under the GE Layoff Benefit Plan (the "LBP"). Finally, they could have foregone either SCTP or the LBP and exercised "bumping rights" under their union contract.[3]

On the other hand, members of the plaintiff class who were "salaried" employees of GE did not have bumping rights, and thus had to choose between SCTP and the LBP. However, the evidence at trial indicated that, at least with regard to the members of the plaintiff class, benefits under SCTP were *substantially* greater than those under the LBP, and all of the class members in fact chose to accept SCTP instead of the LBP.

The GE pension plan is renegotiated and amended every three years.[4] The plan in effect in May of 1987 was negotiated in 1985 and covered the time period between July 1, 1985 and June 30, 1988. This plan is hereinafter referred to as the "1985 Pension Plan." In May of 1987, negotiations for the next plan, which would cover the time period between July 1, 1988 and June 30, 1991 (the "1988 Pension Plan"), had not even begun.

**2.** The parties stipulated that, with two exceptions, each of the class members chose to accept SCTP and terminate his/her employment with GE. The only relief sought by the two class members who did not accept SCTP was the continuation of health insurance benefits until age 65 at no cost. However, since this claim has been withdrawn, these individuals are not eligible for the relief sought herein.

In addition, it has come to the court's attention that a third class member was not even eligible for SCTP. As a result, counsel for the plaintiff class has conceded that this individual is also not eligible for the relief sought herein.

For purposes of simplicity, all further references in this decision to the "plaintiff class" or to the "class members" are to those members of the class who were both eligible for and chose to accept SCTP.

**3.** Bumping rights enable an hourly employee with higher seniority to displace, or "bump," an hourly employee with lower seniority who occupies a similar position that is not being eliminated.

**4.** Although hourly and salaried employees of GE are covered by separate pension plans, the provisions relevant to the instant case are virtually identical in both plans. Accordingly, for purposes of simplicity, all further references in this decision to various GE pension plans are to both the hourly *and* salaried plans.

Under the terms of the 1985 Pension Plan, individuals who were, *inter alia*, at least 57 years of age on July 1, 1985 would receive a "special supplement" of $200/month from age 60 to 62 (the "Special Supplement"). Although each of the class members was at least 55 years of age in May of 1987, none was 57 years of age on July 1, 1985. Accordingly, none of the class members was eligible for the Special Supplement under the 1985 Pension Plan.[5]

█ In connection with the SCTP offer, eligible employees were provided with a document that summarized the terms of the offer.[6] Eligible employees were also provided with an "Employee Information and Election Sheet," a sample of which is annexed hereto as Exhibit "A." This sheet provided, *inter alia*, an estimate of the pension benefits that the employee could expect to receive if he/she accepted SCTP as compared to the pension benefits that the employee could expect to receive if he/she continued to work for GE until age 60 and then retired. Since the class members were not eligible for the Special Supplement under the pension plan in effect at the time of the SCTP offer (*i.e.*, the 1985 Pension Plan), no reference was made to the Special Supplement in their information and election sheets.[7]

During the time period in which affected employees had to choose between the various options available to them, GE Employee Relations representatives set up group meetings in which they counseled said employees with regard to their options and attempted to answer any questions that were raised. Lorraine Janack, a Specialist–Personnel Administrator with GE in May of 1987, conducted several of these meetings.

During the meetings conducted by Mrs. Janack, a number of class members asked her if they would receive the Special Supplement when they turned 60. No one recalls Mrs. Janack's exact response to this recurring question. However, the court finds, based upon the testimony at trial, that she responded something like this:

"No, you are not eligible for, and thus will not receive, the Special Supplement under the terms of the current pension plan. However, I do not have a crystal ball. I cannot predict the future. I do not know what the terms of the next pension plan will be. Thus, whether you will be eligible for the Special Supplement when you turn 60 will depend upon whether you satisfy the criteria of the pension plan in effect at that time. It is a gamble."

5. In addition, the 1985 Pension Plan summary plan descriptions ("SPDs") expressly provide that employees whose service is terminated due to a plant closing or work transfer are not eligible for the Special Supplement. *See* Joint Exhibit 4, at 153; Joint Exhibit 6, at 157.

6. The cover page of this document clearly stated, in pertinent part, that:

The attached material is a summary of the various benefit plans, options and alternatives available to employees who elect termination for Special Continued Termination Pay (Work Transfer). Its intent is to provide a ready reference to the more important features of the plans and as a source of new summary information.

*For detailed descriptions of the various plans, employees should refer to the Employee Benefit Plan Document Books.*

*See* Joint Exhibit 14 (emphasis added).

7. Plaintiff vigorously argued at trial that it was grossly misleading for defendant not to include reference to the Special Supplement in the information and election sheets, since inclusion of the Special Supplement amount in the "Continue Employment and Work Until Age 60, Terminate

and Retire" column would have made SCTP appear far less attractive as compared to continuing employment with GE until age 60 and then retiring. However, this argument fails for several reasons.

First, the information and election sheets clearly indicated that the pension figures were only estimates. Second, as noted above, the class members were not eligible for the Special Supplement under the pension plan in effect at the time of the SCTP offer. Accordingly, inclusion of this amount in their estimates would have been pure speculation, as there was absolutely no reason to assume that the Special Supplement, which by its very nature was "special" and out of the ordinary, would be continued in a future pension plan that had yet to be negotiated.

Third, the testimony at trial demonstrated that the controversy regarding eligibility for the Special Supplement spread rapidly among the members of the plaintiff class. As a result, the court is convinced that the class members had actual notice of said controversy. Thus, even if the format of the information and election sheet had the potential to be misleading, the class members were not in fact misled by it.

Simply stated, Mrs. Janack's response was factually accurate.[8] However, the class members claim that they interpreted her response to mean that they would receive the Special Supplement if it was continued in the pension plan in effect when they turned 60.

The pension plan in effect when most of the class members turned 60 was the 1988 Pension Plan.[9] Under the terms of this plan, the Special Supplement was available to individuals who were, *inter alia,* at least 57 years of age on July 1, 1988. Each of the class members satisfied this requirement,[10] and thus claim that they are entitled to receive the Special Supplement.

However, the 1988 Pension Plan SPDs and official plan documents expressly and unambiguously provide, as did the 1985 Pension Plan SPDs,[11] that employees whose service is terminated due to a plant closing or work transfer are not eligible for the Special Supplement. *See* Joint Exhibit 8, at 163; Joint Exhibit 9, at 188; Joint Exhibit 10, at 177; Joint Exhibit 11, at 192. In addition, the 1988 Pension Plan official plan documents make clear that the class members' pension rights are governed solely by the provisions of the 1985 Pension Plan, and thus that the provisions of the 1988 Pension Plan are simply not applicable to them.[12]

Plaintiff nonetheless claims that the class members are entitled to receive the Special Supplement on the ground that they were misled by information contained in various non-plan documents and oral representations. In support of this claim, plaintiff relied at trial primarily on the information and election sheet, *see* Exhibit "A," and the oral representations of Lorraine Janack.

As noted above, however, the court is not persuaded either (a) that the information and election sheet was misleading, or (b) that the class members were in fact misled thereby.[13] In addition, the court is utterly unpersuaded that any of the other non-plan documents relied upon by plaintiff could have legitimately led the class members to believe that they were entitled to receive the Special Supplement under the 1988 Pension Plan.

Thus, the only issue remaining before the court is whether the statements made by Lorraine Janack at the group meetings that she held in May of 1987 were sufficiently misleading as to either (a) alter the express and unambiguous terms of the 1988 Pension Plan, or (b) estop GE from enforcing the express terms of the 1988 Pension Plan as against the plaintiff class. For the reasons that follow, the court finds that they were not.

*Conclusions of Law*

■ It is well settled that the scope of an ERISA plan is defined by the official plan documents and the SPDs. *See, e.g., Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988); *Aquilio v. Police Benevolent Ass'n of N.Y. State Troopers, Inc.,* 857

---

**8.** In addition, the court found Mrs. Janack's testimony to be quite credible, and finds that she did not intend to mislead or deceive the class members, nor did she act with even a hint of bad faith.

**9.** At trial, the parties did not appear to address the fact that several class members did not turn 60 until the 1991 Pension Plan took effect. However, it appears that these class members would have satisfied the minimum age requirement for the Special Supplement contained in said pension plan.

For purposes of simplicity, the court will assume, as the parties apparently did, that all of the class members satisfied the age criteria in the 1988 Pension Plan.

**10.** *See supra* note 9.

**11.** *See supra* note 5.

**12.** The 1988 Pension Plan official plan documents provide, in pertinent part, that "the rights under the Plan of an Employee who ... left the Service of the Company at any time before July 1, 1988 ... shall be governed by the provisions of the Plan in effect at the date of such Employee's ... termination of service." *See* Joint Exhibit 8, at 168; Joint Exhibit 10, at 182. In addition, the term "Employee" is defined as "all employees of the company regularly employed in the continental United States...." *See* Joint Exhibit 8, at 187; Joint Exhibit 10, at 201.

The testimony at trial made clear that, upon the effective date of their acceptance of SCTP, the class members (a) left the service of GE, and (b) were no longer considered "regularly employed" by GE. Accordingly, their pension rights are governed by the provisions of the 1985 Pension Plan (*i.e.,* the plan in effect at the date of their termination of service).

**13.** *See supra* note 7.

F.Supp. 190, 204 n. 28 (N.D.N.Y.1994); *Snyder v. Elliot W. Dann Co.*, 854 F.Supp. 264, 271 (S.D.N.Y.1994). In fact, an ERISA plan is not subject to alteration or amendment as a result of non-plan documents or informal communications between an employer and plan beneficiaries absent proof of conduct "tantamount to fraud." *Moore,* 856 F.2d at 489, 492.[14]

■ In *Moore,* the Second Circuit found that the plaintiff had not satisfied this standard, since "[t]he record contain[ed] no hint of bad faith, intent to deceive or even conduct that was objectively, if unintentionally, misleading on [defendant's] part." 856 F.2d at 492. Similarly, the record in the instant case contains no hint of bad faith or intent to deceive on the part of Lorraine Janack.[15]

Plaintiff nonetheless argues that he can satisfy the *Moore* "tantamount to fraud" standard by showing that the statements made by Mrs. Janack at the group meetings that she held in May of 1987 were merely "objectively, if unintentionally, misleading."

The court disagrees. *See Aquilio,* 857 F.Supp. at 206. In any event, the court finds, after careful consideration, that the statements made by Mrs. Janack at the group meetings were not even objectively misleading. In fact, as previously noted, said statements were factually accurate.

Accordingly, plaintiff has demonstrated, at most, that Mrs. Janack's statements were *subjectively* and *unintentionally* misleading. Such statements can hardly be considered conduct "tantamount to fraud," and thus are insufficient to alter the express terms of an ERISA plan. *See Moore,* 856 F.2d at 492.

■ Finally, plaintiff has utterly failed to demonstrate either (a) that Mrs. Janack's statements regarding the Special Supplement constituted material misrepresentations, or (b) that the class members relied on said statements in deciding whether to accept or reject SCTP.[16] As a result, "the particular facts of this case do not allow the plaintiff to invoke either equitable or promissory estoppel." *Aquilio,* 857 F.Supp. at 211. *See generally id.* at 197–211; *Snyder,* 854 F.Supp. at 273.

---

**14.** It should be noted that the *Moore* Court expressly limited its holding to ERISA *welfare* plans. The Second Circuit has never explicitly held that ERISA *pension* plans, which "ERISA regulates ... far more extensively than welfare plans," *id.* at 491, are subject to informal amendment even upon a showing of conduct "tantamount to fraud."

In fact, in *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6 (2d Cir.1992), which involved an attempt by an employee to enforce an oral promise to pay *pension*-related benefits, the Second Circuit made no mention of its prior decision in *Moore.* Rather, the Court held that:

> Although Smith may have been induced to relocate to the United States through Dunham–Bush's unenforceable oral assurance, that does not significantly distinguish him from other employees and plan participants seeking to supplement their pension plans with orally promised benefits. *ERISA explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing.* ERISA § 402(a), 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument"). The writing requirement protects employees from having their benefits eroded by oral modifications to the plan.

> Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan. The statutory language of § 1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries.

*Id.* at 10 (emphasis added) (quotation omitted).

In any event, in denying defendant's motion for summary judgment, Judge Cholakis found that the *Moore* standard is applicable to the instant case, and thus the court is bound by this ruling under the law of the case doctrine. *See, e.g., In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir.1991).

**15.** *See supra* note 8.

**16.** It should be noted that various class members testified at trial that they relied on Mrs. Janack's statements regarding the Special Supplement in deciding whether to accept or reject SCTP. However, the court found such testimony to be completely lacking in credibility.

*Conclusion*

For the reasons stated above, it is hereby **ORDERED,** that the complaint is dismissed and judgment is entered for defendant.

## EXHIBIT "A"

### SPECIAL CONTINUED TERMINATION PAY
#### EMPLOYEE INFORMATION AND ELECTION SHEET

Employee Name  _Doris Urban_      Social Security No. ▮▮▮▮▮
Cont. Serv. Date _3 /29/49_      Date of Birth _10 /2/28_    Hourly Rate $ _10.140_
         MO DAY YR            MO DAY YR

Pension Plan Participant on August 14, 1955   YES : _X_ :    NO: ___ :

If you elect to terminate your service with the General Electric Company on _5/1/87_ and receive Special Continued Termination Pay, your monthly gross benefit will be $ ___ _881.61_ ___ MINUS OTHER EARNINGS (see Attached information).

### CONTINUED BENEFIT COMPARISON
#### SPECIAL TERMINATION PAY vs WORKING UNTIL AGE 60

The following shows your estimated pension and available benefits if you work until Age 60 and retire COMPARED with your available benefits if you terminate, receive Special Continued Termination Pay, and then your estimated pension at Age 60:

| BENEFIT (see attached for premiums and other data) | Continue Employment and Work Until Age 60, Terminate and Retire | Terminate, Receive Special Payment and Then Retire at Age 60 |
|---|---|---|
| **RETIREMENT AT AGE 60:** | | |
| o Pension+ (estimated) | $ _633_ | $ _609_ |
| o Supplement Payment (until Age 62 then reduced Social Security if elected) | $ _320_ | $ _304_ |
| | _953_ | _913_ |
| **AVAILABLE BENEFIT AT TERMINATION:** | | |
| o Comprehensive Medical Expense Insurance | Yes | Yes |
| o GE Life Insurance | Yes | Yes |
| o GE Dental Plan | Yes | Yes |
| o Emergency Aid Plan | Yes (Grant Only) | Yes (Grant Only) |
| o Educational Loan Program | Yes | Yes |
| o IDP Refund | -NO- | -NO- |
| o Corporate Alumnus Program | Yes | Yes |
| o Employee Product Purchase Plan | Yes | Yes |
| o Dependent Life Insurance | Yes | Yes |
| **CONVERSION POLICY IS AVAILABLE AT TERMINATION FOR:** | | |
| - Personal Accident Insurance | Yes | Yes |
| - Savings & Security Life Ins. | Yes | Yes |
| **AFTER AGE 65 INSURANCE AVAILABLE:** | | |
| o Reduced Life Insurance | Yes | Yes |
| o Medical Care Plan for Pensioners | Yes | Yes |
| o Pensioners' Prescription Drug Plan | Yes | Yes |
| o Pensioners' Hospital Indemnity Plan | Yes | Yes |
| o The Travelers Medical Insurance Plan | Yes | Yes |

I have reviewed the options available to me and I _Doris Urban_ ___ (Name)

DO : _X_ : DO NOT :___: elect to terminate my service and receive Special Continued Termination Pay

Witness _L. Janack Idmd_ ___ (Employee Relations)    _4/7/87_ (Date)

+Based on present earnings projected to Age 60 and without survivorship option