**Lenard KISHTER, as Trustee of the Alice A. Russell Trust and as the Executor of the Estate of Alice A. Russell, Plaintiff,**

v.

**PRINCIPAL LIFE INSURANCE COMPANY and Lamalie Associates, Inc., Defendants.**

No. 00 CIV. 0013(MBM).

United States District Court, S.D. New York.

Feb. 20, 2002.

Paul L. Dashefsky, Esq., Smithtown, for Plaintiff.

Neil G. Sparber, Esq., Fulbright & Jaworski LLP, New York, for Defendant Lamalie Associates, Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Lenard Kishter is the executor of Alice Russell's estate, as well as the trustee of a trust set up by Russell to receive benefits from life insurance policies provided by her employer. Kishter sues under section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132 (1994 & Supp. V 1999), and also under state law, alleging that Russell's insurance carrier, Principal Life Insurance Company ("Principal"), wrongfully denied her estate life insurance benefits, and that her employer, Lamalie Associates, Inc. ("LAI"), breached its fiduciary duty when it failed to inform Russell accurately as to the extent of her coverage.

All of Kishter's claims against defendant Principal have been dismissed by agreement of the parties. Defendant LAI now moves for summary judgment on all claims. Kishter cross-moves for summary judgment on his breach of fiduciary duty claims. For the reasons set forth below, LAI's motion for summary judgment is granted, and Kishter's cross-motion is denied.

## I.

The following facts are undisputed. Alice Russell was the Director of Finance for Ward Howell International, Inc. ("Ward Howell") when she was diagnosed with cancer in late August or early September 1997. (Def. 56.1 ¶¶ 1, 2) In connection with her employment with Ward Howell, Russell was entitled to life insurance benefits through First Fortis Life Insurance Company ("First Fortis") in the amount of $210,000, and an additional $40,000 through Allmerica Financial ("Allmerica"). (*Id.* ¶ 1)

On September 5, 1997, Russell stopped going to work because of her illness, but made arrangements with Ward Howell that allowed her to do a limited amount of work from home. (*Id.* ¶ 2; Pl. 56.1 ¶ 6) On February 1, 1998, Ward Howell was acquired by LAI. (Def. 56.1 ¶ 4) LAI personnel records show that Russell was transferred to LAI's payroll on February 1.[1] (Dashefsky Affirm. Ex. G) The same records indicate that she remained on the LAI payroll until March 31, 1998, shortly after she began receiving long-term disability benefits from First Fortis on March

5, 1998. (*Id.*) Russell applied for Social Security disability benefits on March 30, 1998. (*Id.* Ex. D) Neither party has presented evidence that her employment was ever formally terminated.

Between February and August 1998, LAI enrolled all former employees of Ward Howell, including Russell, in the LAI benefits plan, which included life insurance coverage with Principal. (Def. 56.1 ¶¶ 4–5) LAI paid a total of $342 in life insurance premiums on Russell's behalf from August 1, 1998 to January 31, 1999 (Kornrich Aff. Ex. H), providing her with at least $200,000 worth of coverage (Def. 56.1 ¶ 15; Pl. 56.1 ¶¶ 13–14).[2] Although Russell's coverage with First Fortis and Allmerica might ordinarily have lapsed at this point, coverage continued under those policies because she was receiving long-term disability benefits, and premiums were therefore no longer required. (Kornrich Aff. Ex. E; Dashefsky Affirm. Ex. A at 118)

On September 9, 1998, Russell wrote to Marilyn Long, the benefits administrator for LAI, to tell her that she had confirmed her $210,000 coverage with First Fortis, and to inquire whether she was still covered by the $40,000 policy from Allmerica. (Kornrich Aff. Ex. E) Long responded that until questions could be answered by her broker, Russell was covered for $270,000 through Principal. (Kornrich Aff. Ex. F; Dashefsky Affirm. Ex. E) "If that needs to be adjusted later," Long stated, "we will make sure that you have at least $40,000 through Principal as long as you have

---

1. Plaintiff offers a document from Marilyn Long to her insurance brokers at Principal that purports to summarize LAI's personnel records. LAI has not challenged the admissibility of the document or its use for the purposes of this summary judgment motion. Consideration of this document is proper in this instance because the document would be admissible either as an admission by a party opponent, which is not hearsay, or via the business records exception to the hearsay rule.

2. The policy was to pay $270,000 if Russell submitted to a physical or $200,000 if she did not. Because she did not take a physical, the policy was presumably worth $200,000.

$210,000 through First Fortis." (*Id.*) Long cautioned that she did not yet know how the benefits would be coordinated among the various carriers. (*Id.*)

Russell died on January 13, 1999. (Def. 56.1 ¶ 10) Upon her death, the Alice A. Russell Trust received $210,000 in life insurance benefits from First Fortis and $40,000 from Allmerica Financial. (Def. 56.1 ¶ 13) However, when plaintiff Kishter, who is both the executor of Russell's estate and the trustee of the Alice A. Russell Trust, filed an additional claim with Principal, the claim was denied. (Def. 56.1 ¶ 12) In a letter to Kishter dated September 2, 1999, Principal explained that it had denied coverage because Russell was not a "Member" who was "Actively at Work," as defined in the Group Policy of LAI, on the date coverage was to begin. (Kornrich Aff. Ex. H)

Kishter sues LAI,[3] claiming that Marilyn Long's inaccurate statements about the extent of Russell's life insurance benefits and the subsequent denial of those benefits constituted a breach of fiduciary duty under ERISA, as well as a breach of contract and common-law fraud. (Compl.¶¶ 17–19, 24–28) Defendant LAI counters that Kishter has no standing to sue under ERISA § 502 because he is not a proper "beneficiary" of an ERISA plan. (Def. Mem. at 9–14, 27–29) Moreover, LAI argues that even if Kishter has standing under ERISA, he cannot recover because he has failed to prove a breach of fiduciary duty. (*Id.* at 14–21) Finally, LAI asserts that Kishter's state-law claims are preempted by ERISA. (*Id.* at 27–30)

## II.

■ Summary judgment will be granted on Kishter's breach of fiduciary duty claim

because, even assuming that a breach occurred, Kishter may not obtain the relief he seeks under ERISA's statutory framework, as recently clarified by the Supreme Court in *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

Kishter alleges that LAI, through its agent Marilyn Long, breached its fiduciary duty by telling Russell that she was covered for life insurance with Principal when, in fact, she was not (Compl.¶¶ 17–19). Plaintiff requests "judgment against the Defendants in the sum of Two Hundred and Seventy Thousand ($270,000.00) Dollars, together with costs, disbursements, attorneys fees, and punitive damages, and such other legal or equitable relief as the Court deems appropriate." (Compl.¶ 29) Kishter's complaint does not specify the precise subsection of ERISA § 502 under which he is suing for breach of fiduciary duty and, therefore, the court is left to determine the precise statutory basis for the action. Section 502 of ERISA authorizes "beneficiaries" to bring five different types of civil actions to obtain the following relief:

— to obtain relief from an administrator who fails to supply requested information, 29 U.S.C. § 1132(a)(1)(A);

— to "recover benefits due to [the beneficiary . . .] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B);

— to obtain "appropriate relief under Section [409]" of ERISA which imposes personal liability on fiduciaries who breach their fiduciary duties, 29 U.S.C. § 1132(a)(2);

---

**3.** Kishter also sued Principal for wrongful denial of life insurance benefits and breach of fiduciary duty under ERISA, and for common-law fraud. (Compl.¶¶ 17–23, 27–28)

However, these claims have been dismissed by agreement of the parties. *Kishter v. Principal Life Ins. Co.,* 00 Civ. 0013 (S.D.N.Y. June 25, 2001).

— "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of [ERISA] or the terms of the plan," 29 U.S.C. § 1132(a)(3);

— to obtain appropriate relief for failure of a plan administrator to provide a statement setting forth information in the administrator's report to the Internal Revenue Service ["IRS"], 29 U.S.C. § 1132(a)(4).

*Lee v. Burkhart,* 991 F.2d 1004, 1008 (2d Cir.1993).

Two of the above provisions can be immediately eliminated from consideration, as they are inapplicable on their face. Section 502(a)(1)(A) authorizes a beneficiary to sue for statutory damages of up to $100 per day when an administrator refuses to provide certain plan information. 29 U.S.C. 1132(a)(1)(A) (1994). Similarly, § 502(a)(4) allows a beneficiary to sue for failure of a fiduciary to provide information submitted to the IRS. 29 U.S.C. 1132(a)(4) (1994). Neither section is implicated in this case because Kishter has not alleged that LAI has failed to provide either type of information.

ERISA § 502(a)(1)(B) is also not a viable basis for a claim because Kishter's breach of fiduciary duty claim cannot be construed as one to "recover benefits due." 29 U.S.C. § 1132(a)(1)(B) (1994). In a separate claim in his complaint, Kishter explicitly included a claim for wrongful denial of benefits and, significantly, that claim was asserted only against Principal (Compl.¶¶ 20–22), the life insurance carrier

that has already been dismissed from this action with the consent of the parties.[4] The present breach of fiduciary duty claim is separate from that claim; unlike the wrongful denial of benefits claim, Kishter here admits that Russell was not entitled to benefits under the LAI plan itself, but alleges that LAI should be liable for telling Russell that she was covered when, in fact, she was not. (Compl.¶ 18). Because plaintiff has admitted, for the purposes of this claim, that he is not entitled to benefits under the plan, the claim cannot be construed as one to recover benefits wrongfully withheld.

Relief under § 502(a)(2) is also unavailable because, although the section will support a breach of fiduciary duty claim when the facts justify it, the section allows damages to be recovered only by the ERISA plan itself, and plaintiff has made clear in his complaint that he seeks an individual remedy payable to himself rather than to the LAI benefits plan. Section 502(a)(2) authorizes a "participant or beneficiary" to bring a civil action for appropriate relief under ERISA § 409, which, in relevant part, requires a fiduciary who has breached his duties to an ERISA plan to "make good to such plan any losses to the plan resulting from each such breach," 29 U.S.C. 1109(a), 1132(a)(2) (1994). The Supreme Court has interpreted this language to mean that recovery under § 502(a)(2) "inures to the benefit of the plan as a whole." *See Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Section 502(a)(2) does not provide a remedy for an individual plaintiff to recover for a breach of fidu-

---

4. Plaintiff likely did not include LAI in its ERISA § 502(a)(1)(B) wrongful denial of benefits claim because, although such a claim may properly be asserted against an ERISA plan, its administrators, or trustees, *see Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989), the Second Circuit has held

that it cannot be raised against an employer as a de facto administrator, *see Yoon v. Fordham Univ. Faculty and Admin. Retirement Plan,* 263 F.3d 196, 207 (2d Cir.2001) (citing *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998)).

ciary duty. *See id.; Anweiler v. Am. Elec. Power Serv. Corp.,* 3 F.3d 986, 992 (7th Cir.1993) (collecting cases); *Lee,* 991 F.2d at 1009.

The subsection that best fits plaintiff's breach of fiduciary duty claims is ERISA § 502(a)(3), which essentially functions as a "'catchall' remedial section." *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). It authorizes a court to grant "appropriate equitable relief" to redress ERISA violations. 29 U.S.C. § 1132(a)(3) (1994). The Supreme Court has held that breach of fiduciary duty claims are proper under ERISA § 502(a)(3), including breach of fiduciary duty claims seeking individualized remedies that would not be obtainable under ERISA § 502(a)(2). *See Varity,* 516 U.S. at 507–13, 116 S.Ct. 1065; *see also Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 89 (2d Cir.2001); *Bixler v. Cent. Penn. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1298–1300 & n. 17 (3d Cir. 1993) (collecting cases).

Historically, the requirement that relief under ERISA § 502(a)(3) be "equitable" has not been a significant obstacle to relief for employees seeking a remedy for breach of fiduciary duty. Although the Supreme Court in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), held that "compensatory damages—monetary relief for all losses [the] plan sustained as a result of the alleged breach of fiduciary duties"—are not recoverable under § 502(a)(3), *id.* at 255, 113 S.Ct. 2063 (emphasis removed), courts have still found purportedly equitable means of providing relief to ERISA plaintiffs seeking a remedy for lost benefits. For example, in *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir.1999), a case remarkably similar to this one, the Second Circuit held that the recovery of $500,000 in life insurance proceeds that the plaintiff would have received but for her late hus-

band's employer's breach of fiduciary duty was a form of "equitable relief" under § 502(a)(3). *Id.* at 143–50. *But see Helfrich v. PNC Bank, Kentucky, Inc.,* 267 F.3d 477, 482 n. 5 (6th Cir.2001) (explicitly rejecting *Strom* ), *petition for cert. filed,* 70 U.S.L.W. 3445 (U.S. Dec. 28, 2001) (No. 01–977); *Ostler v. OCE–USA, Inc.,* No. 00 C 7753, 2001 WL 1191183, at *2–3 (N.D.Ill. Oct.4, 2001) (same). The *Strom* Court reasoned that such monetary relief was similar to the type of relief traditionally sought in an equitable action to enforce the positive duties of loyalty and prudence owed by a fiduciary to a trust. *Id.* at 143–45. Furthermore, the Court stated that the remedy was indistinguishable from the remedy of back pay available under the National Labor Relations Act ("NLRA") and Title VII of the Civil Rights Act of 1964 ("Title VII")—a type of relief that courts have always treated as equitable, and which Congress understood to be a facet of equitable relief when it drafted ERISA's remedial scheme in 1973. *Id.* at 145–50. At least three circuits, including the Second, have similarly held that a monetary award of interest for benefits wrongfully delayed is an equitable remedy recoverable under § 502(a)(3). *See Dunnigan v. Metro. Life Ins. Co.,* 277 F.3d 223, 228–29 (2d Cir.2002); *Clair v. Harris Trust and Sav. Bank,* 190 F.3d 495, 498 (7th Cir.1999); *Fotta v. Trustees of the United Mine Workers,* 165 F.3d 209, 211–14 (3d Cir.1998).

The availability of a relatively broad spectrum of relief for plaintiffs suing for breach of fiduciary duty under ERISA § 502(a)(3) likely explains why some courts that have considered breach of fiduciary duty claims similar to those in the present case have turned their attention directly to the merits of the claim, without consideration of ERISA's statutory framework or the availability of remedies within that framework. *See, e.g., Taylor v. Peoples*

*Natural Gas Co.*, 49 F.3d 982 (3d Cir. 1995); *Eddy v. Colonial Life Ins. Co. of Am.* 919 F.2d 747 (D.C.Cir.1990); *Fortune v. Medical Assocs. of Woodhull, P.C.*, 803 F.Supp. 636 (E.D.N.Y.1992).

However, the Supreme Court's recent decision in *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), has limited the availability of monetary relief under ERISA § 502(a)(3). Therefore, it makes sense in the instant case to examine first the issue of damages and whether plaintiff can obtain any of the relief he seeks, before proceeding to the merits. In *Great–West Life*, the Supreme Court determined that an ERISA beneficiary—a medical insurance company seeking to recover from an employee under the reimbursement provision of an ERISA plan sums that the employee was awarded as compensatory damages in a lawsuit—could not sue that employee under ERISA § 502(a)(3) to recover money due under the plan. *Id.* at 712–13. The Court held that an injunction ordering specific performance under the plan (*i.e.* reimbursement) would not constitute equitable relief because "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 713.

In addition, the Court rejected the notion that the claim could be one for restitution "in the form of a constructive trust or an equitable lien," because restitution is available only "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* at 714. In *Great–West Life*, this condition was not met because the money in question was being held in a separate trust outside of the defendant's possession. *Id.* at 715. Finally, the Court rejected the proposition that

"the common law of trusts provides petitioners with equitable remedies that allow them to bring [an] action under § 502(a)(3)." *Id.* at 717–18.

The impact of the *Great–West Life* decision on precedent in the Second Circuit, most particularly on *Strom v. Goldman Sachs*, is not entirely clear. On the one hand, *Strom* is distinguishable from *Great–West Life* in that *Strom* involved, as the present case does, an alleged breach of fiduciary duty, whereas *Great–West Life* involved only an alleged breach of the terms of an ERISA plan. The Second Circuit in *Strom* noted that "[t]he crucial fact" distinguishing *Strom* from a similar case in which the Circuit had denied a monetary remedy was that *Strom* involved "an action against an alleged fiduciary," as opposed to "a suit ... against nonfiduciary wrongdoers." *Id.* at 143. The distinction, the Court explained, is important because "[an] alleged breach of a fiduciary duty ... always has been within the exclusive jurisdiction of equity." *Id.* at 145.

On the other hand, there is substantial reason to believe that *Great–West Life* has repudiated *Strom* and its reasoning. In *Great–West Life*, the Court reiterated its rejection of the view that "the special equity-court powers applicable to trusts define the reach of § 502(a)(3)." *Great–West Life*, 534 U.S. at ——, 122 S.Ct. at 718 (citing the Court's previous rejection of that view in *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063). Instead, the Court stated that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity.'" *Id.* (quoting *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063). Outside of an action for restitution, as narrowly defined by the Court in *Great–West Life*, it is hard to see how a forced payment of life insurance proceeds could be a remedy that was "typically available in equity," even if breach of

fiduciary duty claims sometimes necessitated such a remedy pursuant to "the special equity-court powers applicable to trusts."

In addition, the Court in *Great–West Life* expressly rejected each of the remaining arguments that the *Strom* Court used to justify its decision. The *Strom* Court had reasoned that ordering the payment of life insurance benefits to remedy a breach of fiduciary duty was indistinguishable from back pay, which was treated as an equitable remedy under Title VII. *Strom,* 202 F.3d at 145–50. However, the Supreme Court in *Great–West Life* denied that back pay is a form of equitable relief, stating instead that back pay may be "made part of an equitable remedy" that includes the hiring or reinstatement of employees, but is not an equitable remedy in itself. *Great–West Life,* 534 U.S. at —— n. 4, 122 S.Ct. at 717 n. 4. *But see Great–West Life,* 534 U.S. at —— & n. 2, 122 S.Ct. at 723 & n. 2 (Ginsburg, J., dissenting) (disputing the Court's characterization of back pay). Furthermore, the Court declined to attach significance independent of the text to Congress's remedial purpose in drafting ERISA § 502(a)(3). Although the *Strom* Court had found such Congressional intent highly instructive, *see Strom,* 202 F.3d at 149–50, the Court in *Great–West Life* referred to ERISA as a "carefully crafted and detailed enforcement scheme" in which Congress had expressly declined to make available any form of legal relief available, *Great–West Life,* 534 U.S. at ——, 122 S.Ct. at 718 (quoting *Mertens,* 508 U.S. at 254, 113 S.Ct. 2063) (internal quotation marks omitted). The Court cautioned that "vague notions of a statute's

'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Id.* (quoting *Mertens,* 508 U.S. at 261, 113 S.Ct. 2063) (internal quotation marks omitted).

Because the Second Circuit's reasoning in *Strom* has been superseded by *Great–West Life,*[5] defendant LAI's motion for summary judgment may be granted because plaintiff Kishter cannot recover the relief he seeks. Kishter seeks a payment in the amount of $270,000 from LAI. (Compl.¶ 29) However, *Great–West Life* dictates that any transfer of funds from LAI to Kishter would not be not a viable remedy because "[a]lmost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* at 713 (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting)) (internal quotation marks omitted). Furthermore, such an action cannot be considered an action for restitution or one implicating a constructive trust because, under *Great–West Life,* such remedies are appropriate only where the specific property being sought is identifiable and in the hands of the defendant. *Id.* at 714. In this case, the money to which plaintiff has a claim is in the hands of Principal, the life insurance carrier, and not LAI. The money he seeks from LAI is the damage he has suffered because Principal will not pay the money it has. Nor

---

5. I am aware that the Second Circuit rendered its opinion in *Dunnigan v. Metropolitan Life Insurance Co.,* 277 F.3d 223 (2d Cir. 2002), which drew upon *Strom* to hold that an award of interest for benefits wrongfully delayed is recoverable under § 502(a)(3), one day *after* the Supreme Court handed down its January 8, 2002 opinion in *Great–West Life.* However, because *Dunnigan* makes no mention of *Great–West Life,* the Second Circuit does not appear to have considered the impact of *Great–West Life* on the continued viability of *Strom.*

can plaintiff recover for the damages that he claims were caused Ms. Russell's reliance on LAI's alleged misstatements and her failure to buy additional life insurance or mortgage insurance that would now be payable to plaintiff. These kinds of compensatory damages are exactly the kind that the Court in *Mertens* decided are not an equitable remedy. *See Mertens*, 508 U.S. at 255–63, 113 S.Ct. 2063. Thus, under the Supreme Court's opinions in *Mertens* and *Great–West Life*, there is no type of "appropriate equitable relief" that could result in plaintiff's receiving the $270,000 he seeks.

Plaintiff has also requested "such other ... equitable relief as the Court deems appropriate." (Compl.¶ 29) However, neither plaintiff nor the court's own ingenuity suggest a form of alternative equitable relief that would be appropriate. Plaintiff has not alleged a pattern of untoward behavior on LAI's part, so there is no occasion for a forward-looking injunction. To the contrary, there is no evidence in the record that LAI has mistreated any other employee or that any misrepresentations were made in bad faith. Instead, what plaintiff seeks is an individualized recovery of at least some part of the money that he lost because LAI did not provide Alice Russell with complete and accurate information about her life insurance policy. (Compl.¶¶ 17–19) However, there is no equitable remedy available under ERISA § 502(a)(3) that can make plaintiff whole under these circumstances.

Because plaintiff has not stated a claim upon which appropriate relief can be granted under any part of ERISA § 502, it is unnecessary to determine whether he is a proper "beneficiary" with standing to sue, or whether the statement he alleges was a breach of LAI's fiduciary duties was in fact an actionable misrepresentation. Defendant LAI's motion for summary judgment is therefore granted as to plaintiff's ERISA claims.

### III.

In addition to his claims under ERISA, plaintiff brings common-law claims against LAI for breach of contract and fraud. Those claims are preempted by ERISA and, therefore, summary judgment on those claims is granted.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a) (1994). ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The phrase " '[r]elates to' must be construed in its 'normal sense'—that is, a state law claim is preempted 'if it has a connection with or reference to such a plan.' " *Gilbert v. Burlington Indus.*, 765 F.2d 320, 326–27 (2d Cir.1985) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). "A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992).

The claims that plaintiff has raised clearly relate to an employee benefit plan. Specifically, plaintiff alleges: 1) that LAI breached its employment contract with Alice Russell when it refused to pay benefits to which she was entitled under an ERISA plan; and 2) that LAI committed fraud by representing to Russell that she was entitled to benefits under an ERISA plan when, in fact, she received no such benefits. Numerous decisions in this Circuit make clear that breach of contract claims

arising from a failure to pay benefits under an ERISA plan are preempted. *See Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 8–10 (2d Cir.1992); *Keiser v. CDC Inv. Management Corp.*, 160 F.Supp.2d 512, 516–17 (S.D.N.Y.2001) (collecting cases); *Yoran v. Bronx–Lebanon Hosp. Ctr.*, No. 96 Civ. 2179, 1999 WL 378350, at \*5 (S.D.N.Y. Jun. 10, 1999) (collecting cases); *Protocare of Metro. N.Y., Inc. v. Mutual Ass'n Admin'rs, Inc.*, 866 F.Supp. 757, 759–60 (S.D.N.Y.1994); *Snyder v. Elliot W. Dann Co.*, 854 F.Supp. 264, 273 (S.D.N.Y.1994). Likewise, allegations of common-law fraud associated with a failure to pay benefits also are preempted. *See Ratner v. Local 29 RWDSU Health & Welfare Fund*, No. 98 Civ. 6808, 2001 WL 11072, at \*2 (S.D.N.Y. Jan.4, 2001); *Lewis v. John Hancock Mut. Life Ins. Co.*, 6 F.Supp.2d 244, 247 (S.D.N.Y.1998); *Snyder*, 854 F.Supp. at 273.

The fact that plaintiff has no remedy under ERISA, and therefore will have no adequate remedy if his state-law claims are preempted, is immaterial to the above analysis. *See Romney v. Lin*, 94 F.3d 74, 81 (2d Cir.1996); *Smith*, 959 F.2d at 11 (collecting cases). Although the result disappoints this plaintiff, the express purpose of ERISA's preemption provision is to make the statute "the exclusive remedy for rights guaranteed under ERISA." *Romney*, 94 F.3d at 80 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)) (internal quotation marks omitted). "The policy choices reflected in Congress's inclusion of certain remedies and exclusion of others would be 'completely undermined' if ERISA plan participants and beneficiaries could freely obtain remedies under state law that Congress has rejected." *Smith*, 959 F.2d at 11 (quoting *Pilot Life*, 481 U.S. at 54, 107 S.Ct. 1549).

Accordingly, summary judgment is granted in favor of LAI on all of plaintiff's state-law claims.

\*     \*     \*     \*     \*     \*

Defendant LAI's motion for summary judgment dismissing plaintiff's breach of fiduciary duty claim under ERISA § 502 is granted, and Kishter's cross-motion for summary judgment as to that claim is denied. Because plaintiff's state-law claims are preempted by ERISA, LAI's motion for summary judgement dismissing those claims is granted as well.

SO ORDERED: