Linda BRINKER, solely in her capacity as Executrix of the ESTATE of Claire BRINKER, Plaintiff,

v.

THE PENSION PLAN FOR ASSOCIATES OF NINE WEST GROUP, INC. and The Retirement Committee of the Pension Plan for Associates of Nine West Group, Inc., Defendants.

No. 04 CIV. 3877(CM).

United States District Court, S.D. New York.

Dec. 3, 2004.

Alan R. Dolinko, Robert Lawrence Margolis, Robinson Curley & Clayton, P.C., Chicago, IL, Frederick P. Alimonte, Alimonti Law Offices, P.C., White Plains, NY, for Plaintiff.

## MEMORANDUM DECISION AND OR-DER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Claire Brinker was employed by Nine West, the well-known maker of women's shoes, from 1972 until January 17, 1997, when she retired. She participated in Nine West's "Pension Plan for Associates of Nine West Group, Inc." (the "Plan"). When she retired, she was fully vested in the Plan. She was not married.

Under the Plan, Claire could take her pension at her "Normal Retirement Date" (i.e., at age 65), or she could elect to receive payments on an "Early Retirement Date," which would commence no earlier than her 55th birthday.

Under the terms of the Employee Retirement Income Security Act (ERISA) and the regulations promulgated thereunder, the accrued benefit under a defined benefit plan (like the Plan) must be paid in the form of a qualified joint and survivor annuity, 29 U.S.C. § 1055(a), or, for a single person, "an annuity for the life of the participant." 26 C.F.R. § 1.401(a)–20 Q & A–25(a). ERISA allows a Plan participant to waive this form of payment, but such waiver may only be made in writing submitted no later than the participant's "annuity starting date"—the first day of the first period for which an amount is scheduled to be paid. 26 C.F.R. §§ 1.417(e)–1(b)(3) and 1.401(a)–20 Q & A–10. ERISA

also mandates that payment of benefits may not commence prior to the participant's normal retirement age—i.e., age 65—without the participant's consent, which must be given either on a written paper document or via electronic media. 26 C.F.R. § 1.411(a)–11(f)(2).

It is undisputed that, as of the day of her death (May 28, 2002), Claire had not filed any written election to receive her benefits in any form other than an annuity for her life, or any written or electronic election to begin receiving payments prior to her 65th birthday. Therefore, as of the date of her death (at which time she was, it appears, 55 years and 11 months old), Claire was not receiving any payments on account of her participation in the Plan and—as a matter of federal law—she was not eligible to receive such payments.

Under the terms of the Plan, if Claire, as a vested participant, died before starting to receive her retirement benefits, her benefits would be forfeited. Benefits were available only to the beneficiaries of "Retired Participants," and that term included only those retirees who were receiving retirement benefits under the plan. (Plan § 5.2) Thus, the Plan by its terms provide that unpaid retirement benefits are forfeited upon death. This feature of the Plan is expressly authorized by ERISA and the regulations promulgated thereunder. See 26 C.F.R. § 1.411(a)–4(b)(1)(i).

Because she was not married, the Plan did not provide for the payment of any death benefit to the persons who were designated as her beneficiaries. Only the spouse of a person who died before qualifying as a "Retired Participant" could collect a death benefit. (Plan § 5.1(a)(ii) and (iii)). Because she died before she started receiving payments, she (and her heirs) received no benefit from her many years of participation in the Plan.

I suspect that Claire had some idea that she was going to die at a young age, because in early 2002, she decided to take a lump sum distribution, and she opened a retirement account at Merrill Lynch into which she planned to roll her pension money. She designated her niece and nephew (plaintiff's children) as the beneficiaries of this account. She also contacted Nine West for instructions about how to obtain a lump sum distribution of her plan benefits.

By letter dated March 20, 2002, Defendants sent Claire two forms: an Application for Benefits Form and a Lump Sum Distribution Form. Also enclosed was a Benefit Calculation Worksheet, which showed her date of birth (July 13, 1946), her marital status (single) and a pro forma calculation of her pension benefits under various forms of payment. One of the pro forma calculations was for a lump sum payable on May 1, 2002. Defendants also included a "Special Notice Regarding Lump Sum payments," as well as instruction on how to obtain the lump sum distribution she sought. Finally, the cover letter asked Claire to submit "Proof of Date of Birth" along with her forms. A Plan Administrator, Mary K. Vidlak, had previously told Claire that she needed to submit her birth certificate in order receive her lump sum benefits.

Claire did not return any of these forms to defendants prior to her death. It appears that she signed the "Lump Sum Distribution Form," though not the "Application for Benefits Form," on May 7, 2002—just a few days before she went into the hospital. Plaintiff Linda Brinker, Claire's Executrix, sent that form back to defendants on August 6, 2002—well after Claire's untimely demise.

Brinker, on behalf of Claire's Estate, is suing the Plan and its Retirement Committee (which turned down her request for

a lump sum payment) for recovery of benefits under ERISA (29 U.S.C. § 1132(a)(1)(B)) and breach of fiduciary duty (29 U.S.C. § 1132(a)(3)). In a separate cause of action, she seeks prejudgment interest on the amounts allegedly due from the Plan. In addition, Brinker asks this Court to exercise its discretion to penalize the Plan for failing to send her (not Claire) copies of the Plan and the Summary Plan Description thereof with the time periods required by law (29 U.S.C. § 1132(c)(1)(B)).

Brinker's claims must be dismissed.

This is, of course, a very sad situation, because it means that Claire's effort to make sure her niece and nephew got her retirement benefits has come to naught. But the defendants acted in complete accord with the law and with the terms of the Plan, so their decision to deny Brinker's claim for a post-death lump sum payment, far from being arbitrary and capricious, is legally unassailable.

■ The statutory requirements under ERISA for obtaining payment (1) prior to age 65, and (2) in any form other than an annuity are clear and are not waivable. Plaintiff failed to comply with those requirements. Prior to her death, she did not submit, in writing, the necessary elections that would have allowed her to receive a lump sum payment of her retirement benefits well before "Normal Retirement Age." As of the date of her death, she had not yet begun receiving benefits, so per the terms of the Plan her benefits were forfeited. She was not married, so no death benefit was payable, again under the clear terms of the Plan. All that is clear from the terms of the Plan.

■ The sticking point, it seems, was Claire's inability to provide her birth certificate or some other official document attesting to her date of birth. The Plan requires that statutory elections (for lump sum payment, for example) be made in the manner prescribed by defendants. The Plan also authorizes the defendant Retirement Committee "to prescribe procedures to be followed by Participants of their Beneficiaries obtaining benefits." Plan § 9.4(g). The package sent to Claire on March 20, 2002 clearly states that Claire was required to supply proof of her date of birth in one of the forms listed on the back of the Application for Benefits Form. Even though the company already had Claire's date of birth on file—probably from her employment application—there was nothing irrational about demanding some form of official corroboration of that date as a condition of formalizing the actuarial calculation of the lump sum benefit due her from the Plan and making Plan payments. As this Court has held, albeit in a different context, "Until we achieve that perfect world where no one makes a mistake and no one cheats, this precaution [requiring certification of information an employer already possesses] may be regarded as commercial prudence...It cannot be regarded as minor or immaterial." *Kayser–Roth Corp. v. Fruit of the Loom, Inc.*, 219 U.S.P.Q. (BNA) 736 (S.D.N.Y.1983) (finding licensee's failure to submit "certified" annual sales reports constituted material breach of licensing agreement, even though licensor already possessed unofficial sales reports).

■ Plaintiff argues that her decedent "substantially complied" with the requirements of ERISA by telling a Nine West benefits administrator of her desire, starting to complete the paperwork that was sent to her, opening the Merrill Lynch account, and telling friends and relatives that she planned to roll over her pension benefits into the Merrill Lynch account. Because defendants were clearly aware of

Claire's birth date—and had even calculated the amount of the lump sum benefit to which she was entitled as of May 1, 2002—plaintiff contends that the administrator's decision to deny Brinker's claim for a post-death lump sum payment was inappropriate.

Plaintiff's focus on the birth certificate is, frankly, misplaced. Her "substantial compliance" argument would have more appeal if Claire had filled out and signed the Application for Benefits and Lump Sum Payment Forms, and sent them to defendants—without the birth certificate or other certification of her birth date—prior to her death. But she did not. When Claire died, there was no form on file with Nine West indicating that Claire wanted lump sum benefits. Not only was there no substantial compliance with the statutory requirements of ERISA—there was no "compliance" whatever. Plaintiff did not send the Lump Sum Benefits Form to Nine West until more than two months after Claire's death—at a time when it was not possible for defendants to ascertain directly from Claire what her wishes were.[1] And no one ever submitted the Application for Benefits Form or any of the other material that was required by the Retirement Committee. Under the circumstances, the "substantial compliance" argument borders on the frivolous.

 The argument also lacks support in the law. Even the authorities cited by plaintiff agree that the "substantial compliance" doctrine cannot be applied where it would materially modify the Plan. *See, e.g., Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1052 (10th Cir.1992). It goes without saying that it would materi-

ally alter the Plan to allow payment of benefits to begin after the participant's right to payment was forfeited by her death. It is equally obvious that the substantial compliance doctrine cannot be used to get around ERISA's iron-clad, statutory rules requiring that early payment and non-annuity-payment elections be made *in writing*—not by starting the process and talking to friends and relatives, or even benefits administrators. Those rules were enacted directly by Congress itself. They are integral to the statute's scheme for protecting older persons from squandering their hard-earned retirement benefits. It is unfortunate that rules designed to protect the many have tripped up one particular individual, but it does not lie with the defendant Retirement Committee or this Court to countermand the express will of Congress. Since, as a matter of fact, it was neither arbitrary nor capricious for the Committee to determine that compliance was not substantial, it cannot be said that cases like *Peckham* offer so much as a scintilla of support for plaintiff's "substantial compliance" theory.

For all these reasons, plaintiff's claim for benefits due must be denied.

Plaintiff's claim for breach of fiduciary duty must be denied as well, for it is no more than a thinly-disguised attempt to assert a claim for money damages—i.e., benefits—that cannot be recovered directly. The United States Supreme Court has stated clearly that ERISA's breach of fiduciary duty provision cannot be used to circumvent a participant's inability to bring a viable claim for benefits under 29 U.S.C. § 1132(a)(1)(B). *See Great–West*

---

1. In this regard, it is noteworthy that Claire was advised that the failure to return her completed forms by 90 days from the date they were sent to her—March 20, 2002—would cause the package to become void and require her to start the process all over again. Letter of March 20, 2002, included as part of Vidlak Ex. 2. By the time plaintiff sent in the signed document, the package had indeed become void.

*Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 713, 151 L.Ed.2d 635 (2002); *Kishter v. Principal Life Insurance Company,* 186 F.Supp.2d 438, 445 (S.D.N.Y.2002) (transfer of funds from Plan to employer is not "equitable relief" where a claimant is not otherwise entitled to recover under the terms of a plan).

Because plaintiff is not entitled to any money from the Plan, her claim for prejudgment interest is dismissed as moot.

■ Finally, I exercise my discretion to deny plaintiff's claim for imposition of a penalty against defendants for failing to provide Claire's Estate with a copy of the Plan or the SPD for 270 and 320 days, respectively, after she requested them. The Second Circuit has indicated that it is not an abuse of discretion to decline to impose an ERISA penalty on a Plan for delay in giving a participant required information if the participant was not prejudiced thereby. *Yoon v. Fordham University Faculty and Admin. Retirement Plan,* 263 F.3d 196, 204, n. 11 (2d Cir. 2001). Here, assuming *arguendo* that the facts alleged constitute a violation of 29 U.S.C. § 1132(c)(1)(B), plaintiff, acting as Claire's Executrix, did not request copies of the Plan and SPD until well after Claire, the participant, had died. Since Claire's right to Plan benefits was (regrettably) forfeited as of the date of her death, the Estate suffered absolutely no detriment due to the delayed transmission of this information. Moreover, the Plan has already paid a penalty, by having to retain counsel and litigate this case. I decline in an exercise of my discretion to impose any additional penalty on the innocent beneficiaries.

The complaint is dismissed. The Clerk of the Court is directed to close the file.